* Judge Hitchcock
delivered the opinion of the court:
The note, which is the foundation of this action, is in the following words: “ Cincinnati, November 20, 1832. One year after date, we jointly and severally promise to pay to the order of the Lafayette Benefit Society of Cincinnati, ninety-eight dollars and twenty-five cents, for value received; but if not promptly paid, then we further promise to pay two and one-half per cent, per month until paid.”
This note was signed by the defendant and two others, and not being paid according to its terms, the plaintiff now seeks to recover the principal, together with interest, at the rate of two and one-half per cent, per month, or thirty per cent, per year.
Whether he is entitled thus to recover, must depend upon the construction of the statute of the state “ fixing the rate of inter *82 est.” This is a subject upon which the legislatures of the several states of the Union, with, perhaps, one or two exceptions, have acted; and this course of action is in accordance with the practice of the civilized world. Many, it is true, have doubted the policy of laws of this description; but none, I believe, have the hardihood to deny that it is within the appropriate sphere of legislative action, unless where such action is prohibited by constitutional provisions. But with the policy of this or any other law, the court have nothing to do. Duty requires us to ascertain what the law is, and having ascertained, to declare it, regardless of consequences.
The law now in force, “ fixing the rate of interest,” was enacted January 12, 1824, 29 Ohio Stat. 451, and provides “ that all creditors shall be entitled to receive interest on all money, after the same shall have become due, either on bond, bill, promissory note, or other instrument of writing; on contract for money or property ; on all balances due on settlement between parties thereto; on money withheld by unreasonable and vexatious delay of payment; and on all judgments obtained from the date thereof; and on all decrees obtained in any court of chancery, for the payment of money, from the day specified in said decree for the payment thereof; or if no day be specified, then from the day of the entering thereof, until such debt, money, or property is paid, at the rate of six per cent, per annum, and no more.” At the last term of this court, this case was under consideration, and a majority of the judges holding the coijrt decided, that in a case like *the present, the plaintiff would be entitled to recover interest according to the terms of the contract. At least I so understand the decision, although it is said that after the principal sum is due, no more than six per cent, can be charged; and in the case before the court, by the terms of the contract, no interest at all was to be charged, if the principal was promptly paid; but if not promptly paid, then interest at the rate of two and one-half per cent, per month. The decision sustains the position, that in all cases, interest can be collected according to the terms of the contract. Since that contract for the payment of interest, however unconscionable, must be enforced in a court of law. Reddish’s Ex’rs v. Watson, Holcomb, and others, 6 Ohio, 510.
Had the decision been made by a full court, we should have considered ourselves bound by its authority; but as there wore only three judges present, and one of those dissenting, it seems to us *83 proper again to reconsider the subject, and to inquire as to the correctness of this decision.
In construing statutes, it is proper to look to the old law, the mischief and the remedy, and so to construe as to carry into effect the intention of the law-making power, in removing the mischief, and applying the remedy, so far as it can be done consistently, with the phraseology of the statute to be construed. The law in force, in this state, at the time of the enactment of the statute of January 12, 1824, was the act of December 29, 1804, entitled “an act fixing the rate of interest, and for preventing usury.” 1 Chas. Stat. 484. The act of January 12, 1824, is a literal copy, so far as it goes, of that of December 29, 1804, with this exception, that in the former, decrees in chancery for the payment of money, are put upon the same footing, as to interest, with judgments at law, whereas in the act of 1804, decrees in chancery are not noticed. Butin the act of 1804, there is this additional clause: “And if any person shall demand or receive more than six per cent, per annum, on any contract, debt, or demand whatever, such person shall forfeit the whole amount of the debt, on which such illegal interest was charged or received, on due proof thereof being made, before any court having jurisdiction thereof, the one-half thereof to be paid into the county treasury, for the use of the county, and the other to the informer, or the person prosecuting.” If there is a prohibition in the law of 1804, against receiving interest *at a greater rate than six per cent, the same prohibition is contained in the law of 1824. In both, it is declared .that “ all creditors shall be entitled to receive interest on all money,” etc., “ at the rate of six per cent, per annum, and no more" The right to receive this much, is in both statutes explicitly, and in the same identical words, declared, and it is as -explicitly declared that “ no more ” than this shall be received. In the law of 1804, for the violation of this prohibition, a penalty is provided. And herein consists the only difference between the two acts; the act of 1804 contains a sanction, while that of 1824 does not. In other words, for a violation of the former, a penalty might be inflicted, while the latter may be violated with impunity. The wisdom of passing any law, without a sanction to enforce its observance, may well be questioned, although that the moral obligation of the citizens, is as strong to obey one as the other, can not be questioned. And cer *84 tainly no court will disregard a law, because those who offend against its provisions are not to be punished.
It will be observed that by the law of 1804 a contract, providing for a greater rate of interest than that therein proscribed, is not declared void, although a penalty is inflicted upon such as shall demand or receive a greater rate. By the construction put upon that act a contract, stipulating the payment of a greater rate of interest than six per cent., was not void. Such contract might be enforced so far as to compel the payment of the principal sum and interest at the rate of six percent., but “no more.” In no one instance within my knowledge was it held that the reservation of •a greater rate vitiated the contract. At the same time if any individual presumed to demand or receive a greater rate, and suit was brought against him, under the statute, he was liable to the penalty.
It was with a view to, and in consequence of, this construction that the court say, in the case of Smith v. Parsons, 1 Ohio, 236, at page 239, “ the state may, for instance, pass laws preventing usury, and fixing the interest of money, should such a law enact that the lender may receive from the borrower six per cent, interest or more; and should an after contract contain an express promise to pay ten per cent., such a contract, although voluntarily made for the payment of a specific sum, would be void in part, and, in many of the ^states the obligation of the contract would be entirely destroyed.” In speaking of “ many of the states,” reference is had to those states where, by express enactment, usurious contracts are declared to be void.
Such, then, was the law of 1804, as understood by the courts of the state. What were the mischiefs complained of? Not that the usurer was prevented from enforcing his unconscionable bargains; but it was supposed to be unjust to empower an individual who had himself sustained no injury to prosecute another for the re.covery of a penalty. True there were then, as there are now, those who could declaim upon the injustice of usury laws; but the only mischief complained of by the community at large was the one which has been specified; and to remedy this the law of 1824 was enacted.
And what was the change made by this new enactment? It has already been pointed out. It was merely the re-enactment of the old law, excepting the penal clause, with an alteration of the title to *85 make it conform to the body of the act. In truth it was nothing more-than the repeal of the penal clause of the act of 1804. The act of 1824 received a construction by this court, on the circuit, immediately after its passage — a construction concurred in by all the members of the court. It was held, as under the former law, that by suit in court “ no more ” than six per cent, interest could be recovered, let the rate reserved in the contract be what it might beyond that amount.. So far as the contract contained a promise to pay a greater rate than this, it was held to be void, but no further. As the words of the new law were identically the same with the corresponding part of the old, the court could not see upon what principle a different construction could be put upon them. Upon the propriety of this construction there was no difference of opinion with the members of the court until after the year 1830 at least; and this circumstance accounts for the fact that no case previous to that time was either reserved for the court in bank or reported. This construction was well understood, and that it was in conformity with the intention of the legislature we have reason to believe; otherwise the subject would not have remained unacted upon for the term of ten years. The law itself would have been explained by the legislative authority, and expressed in words with respect to which there could be no controversy.
Was this a correct construction of the law ? In the case of Reddish’s Executors v. Watson, Holcomb, and othei-s, it is decided it was not, 6 Ohio, 519. In this case, the judge, in delivering the opinion of the court, s.ays, “ a law like ours, prescribing a rate of interest where money due is withheld, and the parties have omitted to fix the rate in their contract, furnishes no rule for the contract; it merely supplies the rule of compensation in eases where the parties have omitted to agree upon one for the unreasonable and vexatious delay of payment.” — p. 516. But is this a fair inference from the words used ? It seems to me not. Had such been the design, how easy would it have been to express that design. It might have been done in explicit terms, and in the use of as few words as are contained in the present law. The law purports to fix the rate of interest, not for a particular class of creditors, but for “ all creditors.” And it fixes the rate of interest upon “ all moneys.” True, it speaks of “ money due,” as did the act of 1804, and that of 1799, preceding it; but it is for’this reason, the *86 collection of money can not be enforced until it is due, and, when collected, the interest attaches at the rate prescribed by the statute.
The judge again says, “ the act does not purport to prescribo the rate of interest for money, before the same shall fall due. It speaks only of interest to be allowed after the same shall become due.” As before remarked, it is similar in this respect to the acts upon the same subject, of 1799, and 1804. In the case of Brockway v. Clark, 6 Ohio 50, the same judge says, “ until the year 1824, we had a statute fixing the rate of interest at six per cent, per annum, and providing punishment for usury. This law was held to make void so much of contracts as stipulated for more than the legal rate of interest.” If under the law of 1804 so much of the contract as relates to the excess of interest, over and above six per cent, per annum, was void, why should it not be void under the law of 1824 ? In both, the rate is fixed at six per cent, and in both it is declared that “no more” shall be received. In neither is there any express prohibition against making a contract for the payment or receipt of a greater rate of interest than six percent., although under the act of 1804, if any man shall “demand or receive ” more than this, he is subjected to a penalty. It is not the making of the contract, but the receipt of the money which constitutes the offense.
*It seems to me that the error of the judge consists in the assumption, that inasmuch as there is no prohibition against contracting for the receipt of a greater rate than six per cent, therefore such contract is obligatory and may be enforced. But so long as the law prescribes that the “ creditor shall be entitled ” to receive “ no more ” than this rate, I do not feel authorized to allow him at the rate of fifteen, twenty, or thirty per cent, per annum.
In the case of Reddish’s Executors v. Benham, etc., reliance seems to be placed upon the title of the act. The title to the act is no part of the act. It may sometimes aid in the construction. When taken in connection with other parts, it may assist in removing ambiguities, where the intent is not plain. But where the words of the enacting clause are clear and positive, recourse must not be had to either title or preamble. 2 Cranch, 386. In the act now under consideration, the words of the enacting clause are clear and positive. There is no room left for construction, there is no appearance of ambiguity, unless this law is to be construed in connection with the positive laws of other states and countries, upon *87 the subjects of interest and usury. But if we resort to title, I do-not feel the force of the argument drawn therefrom. In the law of 1804, the legislature prescribe the rate of interest, and in addition they prescribe that if any person shall demand or receive a. greater'rate, such person shall be subjected to a severe penalty and they entitle this law, having the double object in view, “ an act fixing the rate of interest, and for preventing usury.” In 1824, they have the same subject again under consideration, and they conclude to continue so much of the previous statute as relates to-fixing the rate of interest, and to discontinue that part of it which relates to the punishment of those who shall offend against its prohibition. They act accordingly, and entitle their law,- “ an act fixing the rate of interest” merely. Here is a change in the title; and the reason of the change is obvious. It is that the title may conform more precisely to the body of the act. But it does not follow to my mind, that because the words “ and for preventing usury” are omitted in the title to the act of 1824, therefore, it was-the intention of the legislature to legalize usury.
But suppose the subject had never been acted upon by the legislature before the passage of the law of 1824 — that body *then say “ all creditors shall be entitled to receive on all moneys due,”' etc., “ interest at the rate of six per cent, per annum, and no-more.” Can it be doubted that, if any person presumed to receive a greater rate of interest than this, such person would be thought to have violated the law? Should it be contended that the intention of the law was to allow creditors to receive six per cent, interest when no rate was agreed upon, and as much more as they thought proper to secure by express contract ? Should it be insisted, that in saying that no more than six per cent, should be received, it was intended that more might be received, provided a debtor could be induced to promise to pay more ? Before these positions could be successfully maintained, it does seem to me that the meaning of the language must be changed. Mew rules of construction must be introduced, and new principles adopted. Mow we are bound to give the same effect to the words used in this act fixing the rate of interest as if this were the first statute enacted upon the subject, if it can be done consistently with the well known, rules of construing statutes.
The object of this statute was to apply a remedy to the existing mischief. As before remarked, the mischief in the old law was, *88 that it created a forfeiture of the debt for the violation of its provisions. The only change made was in removing this feature. And this change can hardly require a change of construction as to that part of the law which remains. It never could have been the intention of the legislature to remove all restriction from the usurer; otherwise that intention, would have been clearly expressed.
Since this law provides expressly that “ no more” than six per cent, per annum shall be received by a creditor as interest, we are unwilling so far to disregard it, as to allow that creditor, by a judgment of this court to receive thirty per cent., as claimed in this case.
We are satisfied with the construction which was put upon this law immediately after its enactment, believing it to be in strict conformity with the intention of those by whom it was enacted. The case of Reddish’s Executors v. Watson, et al., is in contravention of that construction, and we do not feel ourselves bound by its authority.
Judgment will be entered in favor of the plaintiff for the *prin■cipal of the note, together with six per cent, interest from the time it fell due
Judge Wood dissented.