## PEYSER *v.* COLE.

ATTORNEY'S FEES—MAY BE STIPULATED FOR IN NOTE.—A stipulation for reasonable attorney fees, in a promissory note, in the event of an action being instituted to collect the same, is valid and enforceable against the maker of the note.

APPEAL from Polk County. The facts are stated in the opinion.

*Weatherford & Blackburn,* for respondent.

A provision in a note, whereby the maker agrees to pay a reasonable sum as attorney's fees in case suit or action is instituted to collect said note or any portion thereof, is valid. (*Wilson S. M. Co.* v. *Moreno,* 6 Sawyer, 35.)

The agreement in notes of the character of the one sued on, is for the payment of damages for the breach of contract in failing to pay the amount due at maturity, or is a penalty for non-payment. The liability for the penalty, or for the liquidated damages, may be avoided by the payment of the note according to its tenor and effect. (*Bank of B. N. A.* v. *Ellis,* 6 Sawyer, 96; *Howenstein* v. *Barnes,* 8 Reporter, 326; *Robinson* v. *Loomis,* 1 P. F. Smith, 78; *McAllister's*

*Appeal*, 9 P. F. Smith, 204; *Mahoning Co., Banks Appeal*, 8 Casey, 158; *Stoneman* v. *Pyle*, 35 Ind., 104; *Smith* v. *Silvers*, 32 Ind., 321; *Clawson* v. *Munson*, 55 Ill., 394; *McIntyre* v. *Cagley*, 37 Iowa, 676; *Siegel* v. *Drumm*, 21 La. Ann., 8; *Nickerson* v. *Sheldon*, 33 Ill., 372; *Tuley* v. *McClung*, 67 Ind., 10; *Heard* v. *Bank*, 8 Neb., 10; *Kemp* v. *Claw*, 8 Neb., 24; *Schmidt & Friday's Appeal*, 1 Norris, 524; *Daly* v. *Maitland*, 32 Am. Rep., 457, S. C. 88 Pa. St., 384; *Miner* v. *Paris Exchange Bank*, 52 Texas, 561; *Davidson* v. *Vorse*, 52 Iowa, 384; *Weatherby* v. *Smith*, 6 Am. Rep., 663, S. C., 30 Iowa, 131; *First Nat. Bank of Fort Dodge* v. *Breese*, 39 Iowa, 640; *Nelson* v. *Everett*, 29 Iowa, 184; *Billingsly* v. *Dean*, 11 Ind., 331; *Churchman* v. *Martin*, 54 Ind., 387.)

*Flinn & Chamberlain*, for appellant:

Contend that a provision or stipulation in a note to pay an attorney's fee in case suit is instituted for its collection, is void. That such a stipulation is against public policy, without consideration and void, is supported by the following authorities: (*Bulloch* v. *Taylor*, 39 Mich., 137; *Witherspoon* v. *Musselman*, 14 Bush., 214; *Thamassan* v. *Townsend*, 10 Bush., 114; *Billing* v. *Thompson*, 12 Bush., 310; *Smith* v. *Sheldon*, 35 Mich., S. C., 42; *Myer* v. *Hart*, 40 Mich., 517; *Wetherbee* v. *Kusterer*, 41 Mich., 359.)

The legislature of Oregon has provided the compensation the prevailing party shall receive from his adversary for his trouble in prosecuting or defending, as the case may be, and thereby fixes and determines what is reasonable, right and legal for the prevailing party to recover over and above his debt and disbursements. (Code, p. 222, sec. 538.)

By the Court, WATSON, C. J.:

The promissory note upon which this action was brought was executed March 9, 1882, in this state presumably, and bore ten per cent. per annum interest, which was the highest rate allowed by the law then in force. (Laws of Oregon, 1880, p. 17.) It also contained the following stipulation, upon which the judgment for attorneys' fees appealed from, was rendered: "And in case suit or action is instituted to collect said note or any portion thereof, to pay such additional sum as the court may adjudge reasonable as attorney's fees in such suit or action." The question here is whether this stipulation was void *per se.* Much diversity as well as conflict of judicial opinion is to be found in the reports of the several states upon this point. As early as 1841 the supreme court of Ohio held that such a stipulation was "against public policy and void." (*State of Ohio* v. *Taylor, et al.,* 10 Ohio, 378.) Wood, J., delivering the opinion of the court, says: "It must be admitted, if this agreement can be enforced, the statutes of Ohio regulating the rate of interest, whether upon loans by the fund commissioners or in other cases, are at once virtually repealed. The statute passed on March 28, 1837, provides that the fund commissioners, in a certain event, may loan the money to individuals at a rate of interest not exceeding seven per cent. Seven per cent. is the maximum of interest the commissioners are authorized to contract for or receive for the forbearance of their loans. They are prohibited from receiving more, in fact, in express terms—that is, *as interest.* It is said, however, that the five per centum in this case is, by the agreement of the parties, to be added to the seven per cent., not as interest, but as *costs,* agreed upon as such, for collection by the parties. Now it seems to be of little

consequence in this case what this five per cent. may be called, but the inquiry is, what is the thing itself? However it may be designated, it is very clear to us it is a mere shift or device, by which twelve per cent. is retained as interest upon this loan, and in this view of the case cannot be enforced. This court have decided that under the laws of Ohio but six per cent. interest is recoverable, though the parties contract for more or higher rates. But is it such a contract as public policy should execute? What may be supposed as the natural result to the community from the execution of this agreement? It would be the condition of future loans at banks that the borrower should pay the expenses of collection, and perhaps the tax thereon."

This is a clear and strong statement of the objections to the validity of stipulations of this character in interest-bearing contracts. The same doctrine prevails in Kentucky, Michigan and Nebraska, in some of which, however, it is placed upon the broader ground of such stipulations being opposed to public policy. (*Witherspoon* v. *Musselman, &c.*, 14 Bush, 214; *Bullock* v. *Taylor*, 39 Mich., 137; *Myer* v. *Hart*, 40 *id.*, 517; *Dow* v. *Updike*, 11 Neb., 95.)

But in Illinois, Indiana, Iowa, Pennsylvania, Tennessee, Texas, and many of the other states, a different view has been taken and the opposite doctrine established. (*Clawson* v. *Munson*, 55 Ill., 394; *Smith* v. *Silvers*, 32 Ind., 321; *McGill* v. *Griffin*, 32 Iowa, 445; *McIntire* v. *Cagley*, 37 Iowa, 676; *McAllister's Appeal*, 69 Pa. St., 204; *Hulnig* v. *Drexel*, 7 Watts, 126; *Imler* v. *Imler*, 94 Pa. St., 372; *Miner* v. *Paris Exchange Cank*, 53 Tex., 559; *Parham* v. *Pulliam*, 5 Col., 407.)

In *Hulnig* v. *Drexel, supra*, the court say: "The contract here has nothing in it oppressive to the borrower; it is advantageous to the borrower and lender when merely in-

tended to enforce a punctual performance of the contract; nor is there the slightest pretence to say that it is intended as a cover to usury. A failure on the part of the borrower puts nothing in the pocket of the lender; on the contrary, the probability is he will not be reimbursed the expenses which he may incur. With such stipulations which are frequently made, persons may borrow money at a less rate of interest, as punctuality is always taken into consideration in fixing the terms of a loan." And in *Parham* v. *Pulliam*, 5 Col., similar views are expressed. In this case the court say: "The contract of the debtor to pay the attorney's commissions, in case of suit upon default of payment of the debt for the prescribed time, adds nothing to the amount of interest to be paid to the creditor. If the debtor pays the ten per cent. interest stipulated, and also pays the attorney's commissions, the creditor has received no more than the ten per cent. interest. If he does not pay the attorney's commissions the creditor receives to that extent less than the ten per cent. interest."

The supreme court of Indiana thus expresses its unqualified approval of such engagements on the part of the borrower: "A stipulation whereby the debtor agrees to be liable for reasonable attorney's fees in the event that his failure to pay the debt shall compel the creditor to resort to legal proceedings to collect his demand, is not only not usurious, but is so eminently just that there should be no hesitation in enforcing it." (*Smith* v. *Silvers, supra.*) As to the consideration for such stipulations, the supreme court of Texas, in *Muier* v. *Paris Exchange Bank,* cited above, say: "If the contract were lawful in other respects, the conditional stipulation to pay the usual attorney fees, in the event suit had to be instituted to enforce it, would be legal and founded upon a valuable consideration. Such fees,

though not an element of damages, in an ordinary suit for the collection of money, can be made such by express contract." (Citing *Roberts* v. *Palmere*, 41 Tex., 617.)

Upon the point of the sufficiency of consideration for such a stipulation, we think there can be no doubt. Making the loan itself, although at the highest rate of interest allowed by law, would constitute a valuable and sufficient consideration. And the only question involving any serious difficulty, it seems to us, is whether such engagements are opposed to the policy of the statute against usury. If the effect of enforcing them would be to give the lender a larger compensation for the loan and use of his money than such statute allows, then they should be held usurious and void. But while the lender has no lawful right to contract with the borrower for a rate of interest exceeding the limit imposed by the statute, he is not debarred from requiring as a condition of making the loan that he shall be secured in such a way as will enable him to receive the principal of the loan and the amount of lawful interest stipulated for, without further loss or expense occasioned by the default of the borrower.

As is said by the court in *Imler* v. *Imler*, 94 Pa. St.: "The contract is one of indemnity, and if the defendant, by his neglect or refusal to pay, has subjected his creditor to the necessity of employing counsel, why should he not pay?" It is no new or additional compensation for the use of money that is provided for by such a stipulation. Such an engagement is not in the nature of a contract for additional interest, but a provision simply against possible future loss or damage of a certain and definite character, which can only result as a consequence of the neglect or default of the borrower, and against which there seems no good reason why he should not be held competent to indemnify. The lender

only charges the rate of interest allowed by law upon his contract with the borrower for interest, but on account of the breach of a further stipulation, not forming any part of said contract, but founded on a valuable consideration, he claims such damages as he may sustain by being compelled to retain counsel to institute judicial proceedings to collect his debt. In legal contemplation, it is possible for the borrower to avoid making default in payment, and competent for him to indemnify the lender against any special damages it may occasion. Such is the view expressed in *Muier* v. *Paris Exchange Bank*, 53 Tex., *supra*, and in our judgment it commands the assent of sound reason. There is nothing peculiar in the particular provisions or general policy of our laws which render this latter class of decisions inapplicable to the determination of the case at bar. On the other hand, such stipulations in contracts for the loan of money in this state are not only frequent, but practically universal. In the several courts of first instance, their validity has generally been recognized, and relief founded upon them awarded in proper cases. In the federal court for the district of Oregon, their validity has been expressly adjudged. (*Wilson S. M. Co.* v. *Moreno*, 6 Sawyer, 35; *Bank of British North America* v. *Ellis, id.*, 96.)

In the presence of this state of things, the law-making power has remained silent, and its tacit approval may not unreasonably be inferred. We should hesitate while a reasonable doubt remained to overturn an existing order of things so important in its relations to the business interests of the country, and so well established in the thoughts and habits of the business public. But while it would hardly be deemed accurate to say that the question has yet been settled either way by a controlling weight of authority, it can hardly be controverted that the current of adjudication

is in favor of the validity of such engagements, subject to the general supervisory power of the courts as to their *bona fides* and reasonableness. Whether a specified amount or per cent. or only "reasonable fees" is provided for by the stipulation, we have no doubt of either the power or duty of the court where the question as to good faith or reasonableness is presented, upon issues properly framed, to pass upon and determine it, as it should any other issue in the case. If found to be a mere pretext for the concealment of usury, or to be unreasonable in amount, the remedy is with the court. In this case the complaint alleged that the sum of forty dollars, for which the judgment appealed from was rendered, was a reasonable attorney's fee for instituting the action, etc. No answer was filed, and consequently this allegation must have been taken as admitted. The only question raised by the demurrer and motion to strike out, was whether such stipulation should be deemed void *per se.* We hold that it was not, and therefore the judgment should be affirmed with costs to respondent.

Judgment affirmed. LORD, J., concurring.