BURNS v. SCOGGIN and Wife.

*(Circuit Court, D. Oregon.   June 20, 1883.)*

1. ATTORNEY FEE.
    A stipulation in a mortgage that if suit is brought to enforce it the mort-gagor will pay the mortgagee a reasonable attorney fee for conducting such suit, is valid, and will be enforced by the court.

2. ITEM—CONTRACT FOR, UNDER POWER OF THE COURT—MUST BE REASONABLE.
    A mortgage for $30,000 in round numbers contained a stipulation that to save the mortgagee " harmless," in case he was compelled to bring suit to en-force the mortgage, the mortgagor would pay him an attorney fee of 10 per centum on the amount due thereon.   *Held* (1) that the real purpose of the stip-ulation was to secure the mortgagee in the repayment of a reasonable attorney fee in enforcing the mortgage by legal proceedings, not exceeding 10 per centum of the amount due thereon; (2) that the amount of such fee depends upon the labor and responsibility involved in the suit, and if the amount fixed in the stipulation, due regard being had to the nature of the service, is exorbi-tant, the court will not enforce it only so far as, under the circumstances, may appear reasonable ; (3) that no defense being made to said suit, the sum of $500 is a sufficient attorney fee for conducting the same.

Suit to Enforce the Lien of a Mortgage.

*C. J. McDougall* and *J. M. Bower*, for plaintiff.

*John Catlin* and *T. B. Handley*, for defendants.

DEADY, J.   The plaintiff, a subject of the queen of Great Britain and Ireland, brings this suit against the defendants, W. G. Scoggin and A. E. Scoggin, his wife, citizens of Oregon, to enforce the lien of a mort-gage given by said defendants on February 24, 1882, upon certain tracts of land situated in Washington county, Oregon, and contain-ing in all about 1,454 acres, to secure the payment of four promissory notes made and delivered by said W. G. Scoggin to the plaintiff on said day,—one for $24,000, payable on December 31, 1884, with in-terest at the rate of 10 per centum per annum from and after ma-turity,—the same being the amount then loaned to said Scoggin by the plaintiff.   The other three were given for the interest to become due on said loan, as follows:   One for $1,856, payable on December 1, 1882, with interest at the rate of 10 per centum from and after maturity; and the other two for $2,160 each, payable on December 1, 1883, and December 1, 1884, with like interest after maturity.   The mortgage contained a clause giving the plaintiff the right to declare all the notes due whenever default was made in the payment of either of them.   Default was made in the payment of the first interest note, and on December 30, 1882, the plaintiff brought this suit to compel

the payment of all the first and second notes by a sale of the mortgaged premises. The mortgage also contained a stipulation that for the "purpose of holding the defendant harmless, and securing him against being put to any cost or expense by reason of having to foreclose said mortgage, that there should be taxed as part of the cost of such foreclosure proceeding at the *commencement* of the suit to foreclose, as and for the benefit of the attorney or attorneys for the plaintiff in such suit, an attorney fee of 10 per centum on the whole amount due on said notes and mortgage."

The bill alleges that this suit is necessarily brought "to collect said sums of money," and "said attorney fee of ten per centum on the whole amount due on said notes has been earned and is due according to the conditions of the mortgage;" and concludes with a prayer that the same, amounting in round numbers to $2,700, may be paid out of the proceeds of the sale of the premises. The defendant W. G. Scoggin answered the bill, admitting the allegations therein as to the execution of the mortgage and the stipulation therein giving the plaintiff the right to declare all the notes due, and for the payment of an attorney fee, but "alleges that ten per centum upon the whole amount now due and unpaid upon said notes is exorbitant, and that the defendants ought not to be required to pay the same, nor any greater sum than $500," which is ample compensation for foreclosing this mortgage; that said 10 per centum is for the benefit of the plaintiff's attorney, and not the plaintiff, and therefore it is without consideration. To this answer the plaintiff filed a formal replication. Afterwards the case was heard upon the pleadings, and a stipulation filed June 4, 1883, to the effect that "the court may find whether or not the plaintiff is entitled to recover an attorney fee as claimed in the bill," and whether the same "is unreasonable or unjust," and, if so, what amount should be allowed; "and the court shall, of its own knowledge and the practice of the courts, determine the amount of the attorney fee in case the same is reduced."

In *Wilson S. M. Co.* v. *Moreno,* 6 Sawy. 35, and *Bank of British N. A.* v. *Ellis,* Id. 104, [S. C. 2 FED. REP. 44,] this court held that an agreement by the maker of a promissory note to pay the holder a reasonable attorney fee in case the same was not paid at maturity, and had to be collected by law, was valid, and would be enforced in an action upon such note. And for the same reason such a stipulation is valid in a mortgage; and so it has been generally held. Jones, Mortg. §§ 359, 1606; *Cox* v. *Smith,* 1 Nev. 172; *McLane* v. *Abrams,* 2 Nev. 208.

But there are some peculiar features in the stipulation concerning the attorney fee in this mortage. For instance, the fee is to be taxed as a part of the cost of the proceedings "at the commencement of the suit," "as and for the benefit of the attorney for the plaintiff." Counsel for the defendant insist, with much plausibility, (1) that as costs are never taxed until the *end* of a suit, because it cannot be known until the judgment of the court is announced who is to pay them, that this stipulation is void for uncertainty if not absurdity; and (2) that as the fee is given, not to the plaintiff who incurs the expense, but his attorney, the promise to pay it is without consideration and void. But I think the court ought to overlook these verbal inaccuracies and interpret the contract as the parties evidently understood it; that is, as a promise by the mortgagor to pay the mortgagee, in case suit was commenced to enforce the mortgage, an attorney fee in such manner and time as the final decree of the court may direct. But the validity of the contract being admitted, counsel for the plaintiff contend that the amount of the fee has been fixed by the contract of the parties, and cannot be reduced by the court except upon proof of fraud. But this contract is, in most respects, a peculiar one. It is made between a borrower and lender, at the moment when the want of the latter often puts him in the power of the former, for a payment in the nature of a penalty, with little, if any, expectation on the part of the borrower that the contingency upon which it is to become operative will ever happen. If not a mere cover for usury, it, in effect, concerns the amount of compensation to be paid to an officer of this court for professional services herein by the adverse party, as a substitute for his common-law "costs." Such a contract is in some sense under the power of the court, and ought not to be enforced by it, unless it plainly appears to be reasonable and just.

As was said in *Wilson S. M. Co.* v. *Moreno, supra :*

"When the fee is so large as to suggest that it is a mere device to secure illegal interest or some unconscionable advantage, the court should be slow to enforce the payment of it, and ought probably, upon slight additional evidence to that effect, to refuse to allow it, or reduce it to a reasonable sum. Borrowers and lenders seldom deal on equal terms, and the necessities of the former often constrain them to accede to terms and conditions which are oppressive, in the vain hope that they will be able to meet their engagements promptly, and thereby avoid the payment of the charges and penalties stipulated for in case of failure. It would, then, be better if these stipulations were not made for a fixed sum or percentage, but rather for such sums as the court, under all circumstances, might judge reasonable and right. In this way regard

might be had to the nature and value of the services actually rendered by the attorney. Where the judgment is obtained without opposition on the part of the debtor, as is often the case, the fee should be less than when it is obtained against such opposition."

What, then, is the nature and value of the services performed and to be performed by the attorney of the plaintiff in this case. The defendants have done nothing to enhance the labor and responsibility of this proceeding. No subsequent mortgage has been made of the premises, or judgment suffered that might be a lien upon them, and thus compel the plaintiff to incur the expense and trouble of making additional parties to his bill. No opposition has been made to the enforcement of the mortgage, and all that the plaintiff is required to do to enable him to collect his debt is simply to prepare and file a bill, and in due time take a decree of sale and distribution of the proceeds for want of an answer thereto. This service is quite simple, and involves only the discharge of routine duties, for the most part merely clerical. Of course, the matter requires reasonable accuracy and attention to details,—such as dates, amounts, and descriptions of property,—while the comparatively large sum involved adds to the responsibility and anxiety of conducting the proceeding to a successful determination.

The case of *Walker* v. *Goldsmith*, 7 Or. 180, was a suit to enforce a mortgage for over $100,000, in which the claim of the plaintiff was vigorously contested in the circuit and supreme courts. Judge Boise, sitting in the circuit court, allowed the plaintiff an attorney fee of $2,500, and the supreme court tacitly approved it. In this state a judge of the circuit or supreme court is paid a salary of $2,000 a year. His duties are usually more onerous and responsible than those of the attorney who conducts a case before him. And although this salary is generally regarded by the bar and business men of the community as grossly inadequate to the service and the position, yet, in estimating the value of an attorney's services from judicial knowledge of such matters, it is proper to take into consideration the compensation provided by law for judicial services. But, tried by any standard of which I have knowledge, or instances within my observation and experience, $2,700 is an exorbitant fee for the conduct of such a case as this; and so exorbitant and out of all proportion to the true or conventional value of the attorney's service, that no court would enforce its payment unless compelled to.

The true intent and purpose of the provision in the mortgage con-

v.16,no.7—47

cerning the attorney fee is well expressed therein as being for the purpose of holding the plaintiff "harmless" from the "cost and expense" of a suit to enforce the mortgage if necessary; and the specification of 10 per centum on the amount recovered ought to be regarded merely as the maximum of this undertaking. It might be that the litigation in such suit, in this and the supreme court, to which it may be taken by appeal, would be such as necessarily to put the plaintiff to the expense of $2,700 for the services of attorneys. But, in any event, he ought not to ask or be allowed more than enough to cover his reasonable expenses in this court—enough to save him "harmless."

What, then, could the plaintiff employ an attorney of average ability and integrity for to conduct the suit in this court, there being no occasion for or right to an appeal?

In *Daly* v. *Maitland*, 88 Pa. St. 384, the mortgage was for $14,-000, and the stipulation gave an attorney fee of 5 per centum of this amount. The court declared this to be unreasonable, and suggested that 2 per centum was ample.

I am quite certain that the plaintiff could have his choice of this bar to conduct this suit through this court, without a defense being made thereto, for the sum which the defendant now offers to allow him—$500. I think this is a very liberal compensation for the service, and therefore limit the attorney fee to that amount.

The plaintiff is entitled to a decree for the sale of the mortgaged premises, and the application of the proceeds to the payment of his debt and the costs of the suit, including $500 as an attorney fee, less the costs incident to this controversy concerning the attorney fee, for which the defendant, W. G. Scoggin, is entitled to a decree against the plaintiff.