Argued March 19; affirmed April 30; rehearing denied
June 18, 1935

# UNION CENTRAL LIFE INSURANCE CO. *v.*
# LAFOLLETTE ET AL.
### (44 P. (2d) 165)

*B. S. Martin,* of Salem (J. A. Jeffrey, of Portland, on the brief), for appellants.

*Philip Hammond* and *W. Lair Thompson,* both of Portland (Philip Hammond and McCamant, Thompson & King, all of Portland, on the brief), for respondent.

BAILEY, J.  The principal question concerned in this appeal is whether or not the transaction between the plaintiff and the defendants LaFollette, involving a loan of $13,000 secured by a mortgage on real property, provided for a usurious rate of interest.

On or about May 20, 1930, the defendant Joseph W. LaFollette and his wife and two daughters procured from the plaintiff a loan of $13,000, and about the same date the LaFollettes executed and delivered to the plaintiff 21 promissory notes.  The first of these notes was for $482.81, payable December 1, 1930, and the next six were due and payable on December 1 for six succeeding years after the date of the first note.  The first of these six obligations was for $1,653.93, and each of the succeeding five notes of that group was for $35 less than the one preceding it.  The other 14 notes were for the sum of $943.93 each, and they were payable one a year beginning December 1, 1937.

Each of these notes contained at the top thereof a statement as to the authority of the agent of the insurance company. All the notes were dated May 20, 1930, and were identical in language except as to the amount of each note and the date of its maturity. Following is the form of the notes, omitting signatures and the statement concerning the agent's authority:

"$1,653.93          Portland, Oregon, May 20, 1930.

"On the first day of December, 1931, for value received, I promise to pay to the order of The Union Central Life Insurance company of Cincinnati, Ohio, sixteen hundred fifty-three and 93/100 dollars, at the home office of said company in Cincinnati, Ohio, with interest at the rate of 10 per centum per annum, after maturity, until paid.

"If this note is sent to the John F. Kaufman & Sons bank at Portland, Oregon, or to any other bank, for collection, I agree to pay exchange and collection expenses, and this note shall not be deemed paid until the money is actually received by said company.

"The right is reserved to prepay this note at any time at the home office of said company in Cincinnati, Ohio, by payment of its present worth as ascertained by discounting it at the rate of 6 per centum interest, compounded annually, provided all prior notes have been paid.

"The right is further reserved to pay in full the unpaid principal in this series of notes, with interest accrued, plus 8 months' additional interest if paid prior to 5 years from the first interest pay day, and plus 4 months' additional interest if paid within the following 10 years, and with no additional interest if paid thereafter.

"This note is one of a series of notes evidencing a loan upon the amortization plan, and is secured by a mortgage or deed of trust of even date. In the event of default in the payment of this note, or default in the payment of taxes upon the premises described in said mortgage or deed of trust or default in the payment of fire insurance premiums or a breach of any of the other

covenants contained in said mortgage or deed of trust, the holder of this note and the remaining unpaid notes of said series may, without notice, elect to declare the entire indebtedness evidenced by said notes, due and payable, and may proceed by foreclosure or by sale under the power contained in said instrument to enforce the collection thereof.

"In case this note is placed in the hands of an attorney for collection, I agree to pay all costs of collection and a reasonable attorney's fee."

The mortgage given to secure payment of these notes, as far as material here, provided:

"This conveyance is intended as a mortgage to secure the payment of a debt evidenced by certain promissory notes of even date herewith, $13,000.00 of which is principal, executed by the mortgagor and payable to the said The Union Central Life Insurance Company, or order, at its home office in Cincinnati, Ohio, and more fully described as follows:

"The first note being for four hundred eighty-two and 81/100 dollars, the 2nd note for $1,653.93; 3rd note for $1,618.93; 4th note for $1,583.93; 5th note for $1,548.93; 6th note for $1,513.93; 7th note for $1,478.93, and the remaining 14 notes for nine hundred forty-three and 93/100 dollars each; the first note being payable on December 1, 1930, and one of the remaining notes being payable on the same day in each of the succeeding 14 years, or prior to maturity in accordance with stipulation therein, with interest after maturity at the rate therein specified.

\* \* \* \* \*

"Fifth.—That the failure to pay when due, any sum secured hereby or any renewal hereof, or the failure to comply with any of the covenants or agreements hereof, shall cause the entire debt secured hereby at once to become due and payable, at the option of the mortgagee, without notice. \* \* \*"

Suit was instituted December 5, 1932, to foreclose the mortgage, at which time the first note of $482.81 had

been paid and $225 had been paid on the principal and interest of the second note, leaving a balance due thereon of $1,520.57 with interest from June 25, 1932, this $225 having been paid in $25 and $50 installments beginning February 27, 1932, and continuing to June of that year. Taxes on the mortgaged real property for the year 1930, amounting to $266.01, and for 1931 in the sum of $190.36, were unpaid and delinquent.

The plaintiff in its amended complaint asked judgment against the defendants in the following several sums, to wit: $1,520.57 with interest at 10 per cent from June 25, 1932, $12,256.07 with interest at 7 per cent from December 1, 1931; $266.01, representing the 1930 taxes paid by plaintiff on June 30, 1933, with interest thereon at 10 per cent per annum from the date of payment; for the further sum of $9 for a continuation of the abstract, and for reasonable attorneys' fees and plaintiff's costs and disbursements.

The defendants by their answer admit many of the material averments of the amended complaint, while denying others, and set forth three alleged separate defenses, the first of which is to the effect that the defendants are in better position to look after and manage the farm lands than a receiver would be, and that therefore no receiver should be appointed. The second defense is to the effect that the mortgaged property will from year to year become more valuable, and they ask that the mortgage be not foreclosed, alleging that within a reasonable time the defendants will be financially able to pay in full all the rightful claims and demands against them. By the third affirmative answer the defendants attempt to allege that by fraud and deceit the plaintiff had procured the defendants to sign contracts for a usurious rate of interest.

Little attention need be paid to these separate defenses except the one averring that the rate of interest charged is usurious, for the reason that the only evidence introduced by the defendants was that of Joseph W. LaFollette, who testified that he had executed the notes and mortgage and that the only money received by the defendants was $13,000. In answer to the question as to whether or not he had read the notes and mortgage, he said, "I read the first note; the one for part of a year—four hundred eighty-two dollars, or something that way"; and that he believed he read the mortgage, "part of it".

■ Before proceeding further, it would be well to mention that appearing in numerous places in appellants' brief are statements which they seem to assume to be either admitted by the pleadings or supported by the evidence. Allegations in an answer, denied by the reply and concerning which no evidence is introduced, can not be considered as proof of any fact. The statements mentioned are of that character.

■ There also appear numerous references to the original complaint filed by the plaintiff, which was not introduced in evidence by the defendants as an admission against plaintiff's interest. The amended complaint superseded all that went before it, and the former pleadings are not a part of the judgment roll and not here before us for consideration: *Prudential Savings & Loan Association v. Stevens*, 144 Or. 298 (14 P. (2d) 296, 23 P. (2d) 901). The cases relied upon by the defendants on this point, to wit, *Sayre v. Mohney*, 35 Or. 141 (56 P. 526), and *Johnson v. Sheridan Lumber Company*, 51 Or. 35 (93 P. 470), merely hold that when amended pleadings have been filed the earlier pleadings may be introduced as admission against the interest of the party filing the same, but these precedents do not sup-

port the defendants' contention that they may otherwise be considered.

The plaintiff introduced in evidence as an aid to the court a compilation showing the method followed in determining the amount of principal and interest included in the different notes. This tabulation, slightly rearranged by the insertion of numbers and total amounts of the notes in order to make it more readily understood, is as follows:

| Number of note | Year due | Amount | Applied on principal | Applied on interest | Balance of principal |
|---|---|---|---|---|---|
| 1 | 1930 | $ 482.81 | $ 0 | $ 482.81 | $13,000.00 |
| 2 | 1931 | 1,653.93 | 743.93 | 910.00 | 12,256.07 |
| 3 | 1932 | 1,618.93 | 761.01 | 857.92 | 11,495.06 |
| 4 | 1933 | 1,583.93 | 779.28 | 804.65 | 10,715.78 |
| 5 | 1934 | 1,548.93 | 798.83 | 750.10 | 9,916.95 |
| 6 | 1935 | 1,513.93 | 819.74 | 694.19 | 9,097.21 |
| 7 | 1936 | 1,478.93 | 842.13 | 636.80 | 8,255.08 |
| 8 | 1937 | 943.93 | 366.07 | 577.86 | 7,889.01 |
| 9 | 1938 | 943.93 | 391.70 | 552.23 | 7,497.31 |
| 10 | 1939 | 943.93 | 419.12 | 524.81 | 7,078.19 |
| 11 | 1940 | 943.93 | 448.46 | 495.47 | 6,629.73 |
| 12 | 1941 | 943.93 | 479.85 | 464.08 | 6,149.88 |
| 13 | 1942 | 943.93 | 513.44 | 430.49 | 5,636.44 |
| 14 | 1943 | 943.93 | 549.38 | 394.55 | 5,087.06 |
| 15 | 1944 | 943.93 | 587.84 | 356.09 | 4,499.22 |
| 16 | 1945 | 943.93 | 628.98 | 314.95 | 3,870.24 |
| 17 | 1946 | 943.93 | 673.01 | 270.92 | 3,197.23 |
| 18 | 1947 | 943.93 | 720.12 | 223.81 | 2,477.11 |
| 19 | 1948 | 943.93 | 770.53 | 173.40 | 1,706.58 |
| 20 | 1949 | 943.93 | 824.47 | 119.46 | 882.11 |
| 21 | 1950 | 943.93 | 882.11 | 61.82 | 0 |

We have already pointed out that all these notes were dated May 20, 1930, and that they were payable on December 1 of each of 21 succeeding years. The first note, for $482.81, represented interest at the rate of 7 per cent per annum on $13,000 from May 20, 1930, to December 1 of that year. Note No. 2, maturing a year later, included the interest on $13,000 for one year at 7 per cent, or $910, and the further sum of $743.93 to be applied on the principal. Each of the remaining notes included interest at 7 per cent on the unpaid balance of the $13,000 loan, together with an additional

amount to be applied on the principal. It will be noticed, in the foregoing tabulation, that notes numbered 8 to 21, inclusive, are all for the sum of $943.93. An analysis of the tabulation will show that $10,000 plus interest at 7 per cent on the unpaid balance, by the payment of $943.93 annually, will be entirely discharged at the end of the twenty-year period. It will further be observed that the larger payments called for by notes 2 to 7, inclusive, cover the $943.93 and a further sum of $500 as annual installment to retire the remaining $3,000 of the loan over a six-year period, together with interest at the rate of 7 per cent per annum on the unpaid balance of this segregated $3,000.

There is no contention made by the defendants that they did not receive the full $13,000. Nor is there any suggestion that any charge was made by the plaintiff as commission or bonus, or that any of the interest was paid in advance. In fact, they admit that the full amount of the loan was paid by the plaintiff to them.

■ To bolster up their contention that the transaction involved a usurious rate of interest the defendants claim that each of the notes bears interest at the rate of 6 per cent per annum from date. The total amount of the notes aggregates, as computed by the defendants, the sum of $23,096.41, and they argue that this amount bears interest at the rate of 6 per cent per annum from May 20, 1930, the date when all the notes were made. This contention is untenable. By the contract between the parties as evidenced by the notes themselves, interest on the amount specified in each separate note was to begin at the date of maturity of the respective note. There is nothing in the language of § 57-1201, Oregon Code 1930, relied upon by the defendants, which would lend countenance to defendants' theory that interest was to be paid on the face of the several notes prior to

their maturity. See, in this connection, *Abbott v. Stone*, 172 Ill. 634 (50 N. E. 328; 64 Am. St. Rep. 60), and *Shive v. Braniff Investment Company* (Tex.), 68 S. W. (2d) 564.

Counsel for the defendants asserted in their briefs and in oral argument that they were at a loss to understand how the plaintiff in its amended complaint and the court in its decree arrived at the sum of $1,520.57 as the balance due on the second note, and the further sum of $12,256.07 as balance of the original loan included in the remaining notes. The second note was for $1,653.93 and all the payments thereon are endorsed on the back of the note. According to these endorsements, the first payment, one of $25, was made February 27, 1932, and before applying this payment the interest from December 1, 1931, to February 27, 1932, on the principal of said note at the rate of 10 per cent, amounting to $39.51, was added to the principal of the note, making a total of $1,693.44, from which amount the $25 was subtracted. Similar procedure was adopted in regard to each of the subsequent payments.

The second item in the judgment, to wit, $12,256.07, is the balance of the $13,000 loan remaining after deducting from it the amount of the principal included in the second note. As this second note had matured before the suit was instituted, the amended complaint prayed for, and the circuit court allowed, 10 per cent interest on the face of the note from maturity. Interest on this $12,256.07 was, in the decree, computed at the rate of 7 per cent per annum from December 1, 1931, since that was the rate at which the transaction was consummated. This date was fixed as the time from which interest should be allowed because all prior interest on the $13,000 loan was covered by the first two notes of the series.

■ Every note of the series, as already pointed out, included interest which would be accrued on the unpaid balance of the principal at the maturity dates of the several notes, as well as payment to be applied on the principal. Inasmuch as interest was to be paid at the rate of 10 per cent from the maturity thereof, by the provisions of all the notes, the obligors of the notes would be required, if the notes were not paid at maturity, to pay interest on that part of the past-due installment note that represented accrued interest. This is not the same thing as compound interest. Compound interest is not only interest on interest but "is interest on the interest on such interest in cases in which there are more than two rests" in the computation. That is, at each period of payment the interest is added to the principal and becomes principal. Annual interest, however, is simple interest on the principal sum, plus simple interest on each installment of interest from the time it falls due until it is paid.

It is a recognized practice in this state and many other states to attach interest-bearing coupons to bonds, to evidence the interest due on the issue by specifying the amount thereof apportioned to each bond; and the amount named in each coupon bears interest from date of maturity. Yet no one would seriously contend that the maker of the bond was required by this means to pay compound interest, or that there was anything inherently wrong or against public policy in this method of financing any undertaking. In principle, the method followed in the case at bar does not materially differ from that adopted in attaching interest-bearing coupons to public or private bonds.

It has already been pointed out that these notes do not provide for compound interest. The rate of interest after maturity does not exceed the highest rate provided

by law: § 57-1201, supra. Notes of this character or notes with interest-bearing coupons attached are not, in most states, considered as against public policy or usurious: *Close v. Riddle,* 40 Or. 592 (67 P. 932, 91 Am. St. Rep. 580); *New England Mortgage Security Company v. Vader,* 28 Fed. 265 [District of Oregon, opinion by Deady, J.]; *Jones v. Nossaman,* 114 Kan. 886 (221 P. 271, 37 A. L. R. 317); *Blair v. Fraley,* 172 Ky. 570 (189 S. W. 886); *Haley v. Covington,* 19 Ga. App. 782 (92 S. E. 297); *Security Savings Bank v. Green* (Mo. App.), 281 S. W. 137; *Central National Bank v. Bateman,* 15 Del. Ch. 31 (131 Atl. 202); *Scottish-American Mortgage Company v. Ogden,* 49 La. Ann. 8 (21 So. 116); *Abbott v. Stone,* supra; *Cade v. Union Central Life Insurance Company* [District of Texas], 6 F. Supp. 832; *Ginn v. New England Mortgage Security Company,* 92 Ala. 135 (8 So. 388); *Parker v. McGinty,* 77 Colo. 458 (239 P. 10); *Williams v. Forman,* 158 Ga. 89 (123 S. E. 20); *Stanford v. U. S. Investment Corporation* (Tex. Civ. App.), 272 S. W. 568.

The facts in the case of *Levens v. Briggs,* 21 Or. 333 (28 P. 15, 14 L. R. A. 188), are entirely unlike those in the case at bar. There the note provided for the principal to draw interest at the rate of 10 per cent per annum and if not paid "at the expiration of each year, that said accrued interest shall be considered as an additional amount of principal to the original, and bear like interest per annum from the date of the expiration of each year". The court, in referring to the fact that it was against public policy to collect compound interest, called attention to the case of *New England Mortgage Security Company v. Vader,* supra, and the fact that in that instance the contract was to pay interest on a coupon or interest note after maturity, and further observed:

"But the more stringent line of authorities upon the subject allow this as an exception."

Both the appellants and the respondent refer to and discuss at some length *Law Trust Society v. Hogue,* 37 Or. 544 (62 P. 380, 63 P. 690). There the question concerned the right to charge a higher rate of interest after maturity. The opinion held that such higher rate would not be considered usurious unless it appeared that the parties intended to avoid the law, but that such additional interest would be considered as a penalty for nonpayment.

Some of the states by statute prohibit the charging of an additional or greater rate of interest after maturity: *Chase v. Whitten,* 51 Minn. 485 (53 N. W. 767); *LaFayette Benefit Society v. Lewis,* 7 Ohio 80. In Oregon there is no such prohibition, unless the interest so charged exceeds the limit expressed in § 57-1201, supra.

◼ On the face of each of the notes is this provision: "This note is one of a series of notes evidencing a loan upon the amortization plan and is secured by a mortgage or deed of trust of even date." The mortgage itself contains the provision that it was given "to secure the payment of a debt evidenced by certain promissory notes of even date herewith, $13,000 of which is principal." It is, however, insisted by the defendants that according to their acceleration clause the notes become, as to their entire face, due and payable at the option of the insurance company, upon the default of the makers of the notes with reference to the terms of either the notes or the mortgage. As the basis of this contention, the defendants point to that part of the note providing that "in the event of default in the payment of this note * * * the holder of this note and the remaining unpaid notes of said series may, without notice,

elect and declare the entire indebtedness evidenced by said notes due and payable".

The entire indebtedness owing from defendants to plaintiff at the time the notes were made was the sum of $13,000, which amount was, according to the contract although not expressly so stated therein, to bear interest at the rate of 7 per cent per annum from date. It was never intended by the parties that the insurance company could, upon default by the defendants, proceed to collect the aggregate face of the notes. That the whole amount of these notes was not construed by the parties to the transaction as a present indebtedness from the defendants to the plaintiff is further evidenced by the fact that each note provides: "The right is reserved to prepay this note at any time * * * by payment of its present worth as ascertained by discounting it at the rate of six per centum interest, compounded annually."

In the case of *Aetna Life Insurance Company v. Foster* (Tex. Civ. App.), 66 S. W. (2d) 428, the court in considering an acceleration clause to the effect that upon default "the whole of the indebtedness secured hereby" should become due and payable, held that it referred only to the $2,500 principal and accrued interest thereon, and not to the face of the notes. A similar holding was announced in *Spiller v. Bell,* (Tex. Civ. App.), 55 S. W. (2d) 634); *Clement v. Scott* (Tex. Civ. App.), 60 S. W. (2d) 258; and *Cade v. Union Central Life Insurance Company,* supra. In this last case the court said: "While one will not be permitted to explain away the result of plain words by offering to show a harmless intent, the rule is, I think, that where the words of a contract are such that two constructions may be given it, one of which is lawful, and the other of which is unlawful, testimony of cleanli-

ness of purpose may be offered. [Citing many authorities.] While the statement must be considered in its appropriate limitations, it may also be conceded that usury rests in an attempt to exact more than the legal limit for the use of money."

There is nothing in the record here to indicate that the plaintiff intended by its transaction with the defendants even to demand that the defendants upon default pay immediately the aggregate amount of all the notes. All that it was entitled to collect, in case of default, was the unpaid balance of the loan and accrued interest. This, and this alone, it sought to collect.

■ A stipulation in a note that if the debt is not paid at maturity and suit or action is instituted to collect the same, the borrower shall pay reasonable attorneys' fees, can not be interpreted as increasing the rate of interest as such, with effect to render the note usurious. It might be otherwise in cases in which the instrument provided for a fixed amount or percentage as attorneys' fees, in an attempt to circumvent usury laws: 27 R. C. L., p. 233, § 34; 66 C. J., p. 235, § 174. See also, in this connection, *Wilson Sewing Machine Co. v. Moreno,* 7 Fed. 806; *Peyser v. Cole,* 11 Or. 39 (4 P. 520, 51 Am. Rep. 451); *Burns v. Scoggin,* 16 Fed. 734.

The appellants' brief cites and discusses many decisions from the state of Texas. There, as indicated in the case of *Parks v. Lubbock,* 92 Tex. 635 (51 S. W. 322), "the authorities seem to be practically unanimous in upholding the legality" of the stipulation contained in the note before the court for consideration. Based, however, upon the language of the Texas statute providing the rate of interest which could be charged for the "detention" [which word is not found in the statutes of many other states] of money, the decisions of that

state are not in accord with the general holding of the courts.

In their original and reply briefs the appellants have cited some 240 cases, in addition to many textbooks and legal encyclopedias. We have considered all the authorities submitted, but have made no attempt to compare or distinguish most of these citations for the reason that many of them involve a deliberate attempt to evade usury laws by including in the amount to be paid by the borrower large sums of money as bonus, commission or other similar charges; while other cases cited are from states which, like Texas, have statutes dissimilar from those of most of the other states.

There is nothing whatever involved in the case before us which would render the transaction between the plaintiff and the defendants usurious. It therefore follows that the decree appealed from must be affirmed, neither party to recover costs in this court.

CAMPBELL, C. J., did not take part in the consideration of this case.