## New England Mortgage Security Co. *v.* Vader and Husband.

(*Circuit Court, D. Oregon.* August 9, 1886.)

1. CORPORATIONS—FOREIGN CORPORATION.
    It is not necessary for a foreign corporation not engaged in insurance, banking, express, or exchange business, to appoint an attorney within the state, on whom process may be served in actions against it, (Laws Or. p. 617, §§ 7, 8,) before doing business therein.

2. SAME—ACTION—OMISSION TO APPOINT AN ATTORNEY A MATTER OF DEFENSE.
    In a suit by a foreign corporation required to appoint such attorney, it is not necessary for the plaintiff to allege such appointment; but the omission to do so may be pleaded in abatement.

3. CONFLICT OF LAWS—NOTE MADE IN ONE PLACE AND PAYABLE, WITH INTEREST, IN ANOTHER.
    *Prima facie* the place of payment of a promissory note is the place of performance, including the rate of interest that may be demanded thereon; but the parties thereto may adopt the law of the place of making the contract as the place of payment, so far as such interest is concerned, and the fact that the higher rate of interest allowed by the law of the place of the making of

the contract is specified in the note is sufficient evidence of the intention of the parties to contract with reference to such law, rather than that of the place of payment.

4. INTEREST ON INTEREST.

A contract to pay interest on a coupon or interest note after maturity will be enforced; and, in the absence of any agreement thereabout, the sum named in such coupon will, under the Oregon statute, (Sess. Laws 1880, p. 17,) giving interest at 8 per centum "on all moneys after the same become due," draw interest at that rate after maturity.

5. MORTGAGE—PAYMENT OF TAXES BY MORTGAGOR.

A contract by a mortgagor to pay the taxes levied on the mortgaged premises, and, in default thereof, that the mortgagee may pay the same, and add the amount to his mortgage, is valid, and will be enforced; and although the state may subsequently apportion such taxes between the mortgagor and the mortgagee, and require each to pay its share thereof into the state treasury directly, it cannot annul or modify such contract, as between the mortgagor and mortgagee, and, in case the latter is required to and does pay any of such taxes, he may enforce the repayment of the same in the manner provided in the mortgage.

Suit to Enforce the Lien of a Mortgage.

*J. D. Fenton*, for plaintiff.

*L. H. Montanye*, for defendants.

DEADY, J. This suit is brought by the plaintiff, a corporation formed under the law of Connecticut, against the defendants, citizens of Oregon, to enforce the lien of a mortgage on certain real property. The suit was commenced on August 12, 1885, in the state circuit court for the county of Linn, and afterwards removed here by the plaintiff. Here the plaintiff filed an amended "complaint," and the cause was heard on a demurrer thereto.

From the amended bill or complaint it appears that on April 21, 1881, the defendants made and delivered their promissory note, payable to the order of the plaintiff, on April 21, 1886, for $2,000, "with interest from date until paid, at eight per centum per annum, as per coupons attached, at the office of the Corbin Banking Company, New York city." The note also contained the following stipulations:

"Unpaid interest shall bear interest at ten per centum per annum. On failure to pay interest within five days after due, the holder may collect the principal and interest at once. And in case suit is instituted to collect this note, or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable, as attorney's fees in said suit."

And also made and delivered to the plaintiff their six coupon or interest notes, for the interest to accrue on said principal note, for the sums and payable as follows: One for $110.68, payable January 1, 1882; four for $160 each, payable, respectively, January 1, 1883, 1884, 1885, and 1886; and one for $49.32, payable April 21, 1886. There is now due on the principal note and the last two coupons the sum of $2,320, with interest on $2,000 thereof at 8 per centum per annum from January 1, 1886, and on said coupon notes from the date when they became payable at 10 per centum per annum, in United States gold coin, no part of which has been paid.

On April 21, 1881, the defendants, to secure the payment of said note and coupons, and all sums of money thereby agreed to be paid, executed to the plaintiff a mortgage on a certain tract of land, situate in Lane county, Oregon, containing 640 acres; which mortgage contained the following stipulations: (1) That if said defendants fail to pay any of said interest when due, the same shall bear interest at the rate of 10 per centum per annum; (2) the defendants will pay all taxes and assessments levied on said real property before the same becomes delinquent, and, if not so paid, the holder of the mortgage may, without notice, declare the whole sum thereby secured due at once, or may elect to pay said taxes and assessments, and be entitled to interest on the same at the rate of 10 per centum per annum, for which the mortgage shall be a security; (3) if the defendants fail to pay any of said money within five days after the same shall become due, or to conform to or comply with any of these stipulations, then the whole amount secured by the mortgage shall become due at once; and (4) that on filing of a bill to enforce the lien of said mortgage the plaintiff therein shall recover a reasonable attorney's fee, to be taxed by the court, for which the mortgage shall stand as security.

For the years 1883, 1884, and 1885 taxes were levied on said land by Linn county amounting to $106.11, which became delinquent, and were a lien thereon, and have since been paid by the plaintiff; and by a stipulation filed April 13, 1886, it was agreed that on the argument of the demurrer the court may consider the liability of the defendants to pay the taxes mentioned, and in so doing may consider the bill and the original mortgage, and "allow or disallow such claim for taxes" as it may be advised.

The grounds of the demurrer as maintained on the argument are substantially these: (1) The plaintiff has not the capacity to maintain this suit; (2) the notes are made payable in New York, in violation of the usury laws of that state, and are therefore void; (3) the agreement to pay interest on the interest notes after maturity is an agreement to pay compound interest, and is therefore void; (4) the agreement to pay the taxes is either without consideration or usurious, and therefore void.

On the argument it was admitted that the defendants, having dealt with the plaintiff as a corporation, are so far estopped to deny its corporate existence; but it is contended that it does not appear that the plaintiff complied with the law of this state concerning foreign corporations doing business herein, before making this loan. Sections 7 and 8 of this law (Laws Or. p. 617) provide that a foreign corporation, before doing business in this state, must make and have "recorded, in the county clerk's office of each county where it has a resident agent," a power of attorney, by which some citizen and resident of the state is appointed the attorney of such corporation, on whom process may be served in actions against it. It appears from

the bill that the plaintiff, before doing business in this state, had its power of attorney recorded in Yamhill county, by which a citizen and resident of this state was appointed its "resident agent" within the state, pursuant to said law.

The objection made by the defendants to this method of complying with the law seems based on the assumption that the corporation is required to have this power of attorney recorded in each county of the state in which it may do business or make a loan; and that as it does not appear to have been recorded in Linn county, where the defendants lived when this note and mortgage were made and the business presumably transacted, they are void. The statute, it will be observed, does not require the power to be recorded in each county where the corporation may do business, but only in the county where it may have "a resident agent." But the bill does not state whether the plaintiff has a resident agent anywhere in the state. The existence of such agent should precede the record of the power, while in this case the power purports to create the "resident agent," but not the attorney for the service of process.

It has been held in this court that it is unnecessary for a plaintiff corporation to allege a compliance with this law in the first place. Such compliance will be presumed, and if a defendant wishes to avail himself of any omission or defect in this respect, he must plead it in abatement. However, the statute does not apply to this corporation. The corporations mentioned in the title of the act are "insurance, banking, express, or exchange corporations." It has been held both in this and the state court that the general words of sections 7 and 8 of the act must, under section 20 of article 4 of the state constitution, which requires the subject of an act to be expressed in its title, be restrained to the corporations mentioned in the title. *Oregon & Wash. T. & I. Co.* v. *Rathbun,* 5 Sawy. 32; *Singer Manuf'g Co.* v. *Graham,* 8 Or. 17. The plaintiff is neither an "insurance, banking, express, or exchange" corporation.

As to the second point, it is admitted that the rate of interest allowed by the statute (June 27, 1879) of New York is only 6 per centum, and that this court will take judicial knowledge of the laws of that state. *Owings* v. *Hull,* 9 Pet. 624; *Bennett* v. *Bennett,* 1 Deady, 309. The argument in behalf of the defendants on this point is that, by making this note payable in New York, the parties to the contract made that the place of performance, including the rate of interest payable by the law thereof. There is some confusion and contradiction in the writers and authorities on this subject, but the current of the later ones establish the just and convenient rule for the solution of the problem, namely, the place of performance depends on the intention of the parties to the contract. Where a note made in one place is made payable in another, *prima facie* the place of payment is the place of performance, and the law of the latter, for the purposes of payment and its incidents, applies to the transaction.

But this fact is by no means conclusive evidence that such was the intention of the parties; and the contrary may be inferred from the immediate circumstances, or shown by extraneous evidence. Whart. Confl. Laws, § 505. And even when the place of payment is to be taken as the place of performance, for the purposes of payment, and matters incidental thereto, including days of grace, the rate of interest, where none is specified in the contract, and the like, it may satisfactorily appear from the circumstances of the case that it was not the intention of the parties that the rate of interest should be governed by the law of such place. And, generally, "the law of the place where the contract is made is to determine the rate of interest, when the contract specifically gives interest." 2 Kent, Comm. 460; Story, Confl. Laws, § 305. And this conclusion must be based on the fact that an agreement for a specific rate of interest on a loan constitutes a part of the obligation of a contract which is always measured or tried by the *lex loci contractus* and not the *lex loci solutionis;* and, for the purposes of this question, it is said by an eminent writer that "the true view seems to be that the place of performance of an obligation for the payment of money is the place where the money is used" and put at risk. Whart. Confl. Laws, § 508. Again, when the rate of interest is different in the place where a note is made and where it is payable, and two conflicting laws are thus brought to bear on the same point, the court will apply that law to the transaction which will best support the validity of the obligation; for it is not to be presumed that the parties in fixing the rate of interest acted with reference to the law of a place which would make the contract void. Whart. Confl. Laws, § 507.

Now, in this case, all these controlling circumstances point to the conclusion that, although the note was made payable in New York, the parties in fixing the rate of interest had reference to the law of Oregon, and intended to be governed thereby. The contract was made here, and the rate of interest specified therein. The money was used here, and the rate of interest agreed on is allowed by the law of this state, but forbidden by that of New York.

In *Miller* v. *Tiffany,* 1 Wall. 310, Mr. Justice SWAYNE, quoting with approval from *Andrews* v. *Pond,* 13 Pet. 77, 78, says: "The general principle in relation to contracts made in one place to be performed in another is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the law of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest without incurring the penalties of usury." And adds: "The converse of this proposition is also well settled. If the rate of interest be higher at the place of contract than at the place of performance, the parties may lawfully contract in that case also for the higher rate;" citing *De Pau* v. *Humphreys,* 10 Mart. (La.) 1.

In Jones on Mortgages (section 657) the result of the authorities

is stated as follows: "The parties may stipulate for interest with reference to the laws of either the place of contract or the place of payment, so long as the provision be made in good faith, and not as a cover for usury;" citing *Townsend* v. *Riley*, 46 N. H. 300; *Peck* v. *Mayo*, 14 Vt. 33, 38.

In *Kilgore* v. *Dempsey*, 18 Amer. Rep. 310, S. C. 25 Ohio St. 413, it was held that where a note is made in one state, and payable in another, and the rate of interest allowed in such states is different, the law of either state may be applied to the contract.

In *Thornton* v. *Dean*, 45 Amer. Rep. 799, S. C. 19 S. C. 583, it was held that when a contract is entered into in one state, to be performed in another, the parties may stipulate for the rate of interest allowed in either country.

In Daniel on Negotiable Instruments (section 922) it is said:

"There are some contracts, however, which would be illegal if all the parties resided or contracted either in the state where it is made or where it is to be performed, which are nevertheless recognized and enforced if valid either in the one place or the other; and of this nature are contracts to pay interest at rates which, by the law of one place or the other, would be usurious and void. In such cases the intention of the parties is effectuated as a concession to trade and commerce between nations; and, if the transaction is not in itself immoral, the rate of interest authorized either by the country where the contract is made or to be performed is allowed to prevail."

In the leading case of *De Pau* v. *Humphreys*, 10 Mart. (La.) 1, it was held that a note made in Louisiana, payable with 10 per centum interest,—the legal rate in that state,—was not usurious, but valid, although payable in New York, where the interest is only 7 per centum.

Mr. Daniels, (Neg. Inst. § 922,) in referring to this case, says: "The like view has been recognized and adopted in numerous cases, and may be regarded as a recognized principle of English and American jurisprudence;" citing a great number of authorities.

In the light of these authorities, and on every consideration of convenience and utility, the parties to this transaction, being at liberty to contract for either the Oregon or New York rate of interest, the very fact that they adopted the former is satisfactory evidence that they contracted in this respect with reference to the laws of this state, and intended to be governed thereby. The note of the defendants was made payable in New York simply for the convenience of the lender. There is no pretense that there was any design or purpose to contract for or obtain what might be regarded as a usurious rate of interest. On the contrary, the contract was openly made in good faith, in accordance with the law of this state, where the defendants resided, and it would be a reproach to the administration of justice if the defendants could now defraud the plaintiff out of its money simply because their note was, with their consent, and only for the convenience of the lender, made payable in New York rather than Oregon.

There is no law of this state that prohibits the payment of interest on interest; and the better opinion is that no contract for the payment of interest, whether on interest or principal, is usurious or illegal, unless prohibited by statute. Tyler, Usury, 64. But the rule was early established in equity that compound interest would not be allowed, not because it was usurious or contrary to the statute on that subject, but because the practice, if allowed, would lead to the oppression of improvident debtors. *Connecticut* v. *Jackson*, 1 Johns. Ch. 13. This rule doubtless had its origin in the old ecclesiastical idea that the taking of interest, under any circumstances, was usury, and a grievous sin. But the tendency of opinion has been towards the suggestion of Lord THURLOW, in *Waring* v. *Cunliffe*, 1 Ves. Jr. 99, that there is nothing unjust in compelling a debtor who neglects to pay interest when it becomes due, to pay interest upon that interest; and so it was early settled that a promise to pay interest on interest after the latter became due is valid. *Kellogg* v. *Hickok*, 1 Wend. 521; *Hathaway* v. *Meads*, 11 Or. 66; S. C. 4 Pac. Rep. 519.

By the law of this state (Sess. Laws 1880, p. 17) interest is allowed at "8 per centum per annum, and no more, on all moneys after the same become due; * * * but on contracts, interest at the rate of 10 per centum per annum may be charged by express agreement of the parties, and no more." These interest notes are distinct contracts for the payment of money, and when they became due were entitled, under this statute, without any agreement of the parties on the subject, to draw interest at 8 per centum per annum until paid, or, by the agreement of the parties, they might draw 10 per centum. The provision of the statute is, in effect, that interest shall be allowed "on *all* moneys after the same become due," and that at least includes the case of money due on an interest or coupon note, or a promise or agreement in a principal note, to the effect that the interest thereon shall be paid at a certain period or periods prior to the maturity thereof. But interest concerning the payment of which no special promise is made, and which no otherwise exists or is due than as an increment of the principal sum, is not included in this statute as "money" due and entitled to bear interest. But a promise to pay interest as a distinct debt or liability, either in or out of the principal contract, and before or as the principal sum falls due, is a promise to pay a sum of money which, when due, bears interest under the statute, either at the legal rate, or according to the agreement of the parties, within the limit allowed thereby.

In *Bledsoe* v. *Nixon*, 12 Amer. Rep. 642, S. C. 69 N. C. 89, it was held that when a promissory note contained a stipulation that the interest thereon should be paid semi-annually, an unpaid installment of interest drew interest, as if a note had been given therefor.

In *Wheaton* v. *Pike*, 11 Amer. Rep. 227, S. C. 9 R. I. 132, it was held that where a promissory note was made payable in three years after date, with interest payable semi-annually, each installment of

interest falling due before the maturity of the note drew interest from the time it was due until paid.

In *Aurora* v. *West*, 7 Wall. 104, it was held that interest coupons, by universal usage and consent have all the qualities of commercial paper, and should draw interest after payment is neglected or refused. To the same effect is the ruling in *Clark* v. *Iowa*, 20 Wall. 589; *Town of Genoa* v. *Woodruff*, 92 U. S. 502; and *Gelpcke* v. *Dubuque*, 1 Wall. 200.

In Jones on Mortgages (sections 653, 1141) it is said that coupons for the interest on a mortgage debt are, in effect, promissory notes, and draw interest in the same manner after maturity. To the same effect is Daniel, Neg. Inst. § 1513. See, also, *Harper* v. *Ely*, 70 Ill. 581; *Thayer* v. *Star Mining Co.*, 105 Ill. 552.

In my judgment these interest notes are entitled to draw interest, at the rate agreed on, from the date of their maturity.

As to the taxes, it was the duty of the defendants, at the date of this contract, to pay them, irrespective of any agreement with the plaintiff on the subject. They were the owners of the premises, and in the receipt of the rents and profits thereof, and the law imposed on them the duty of paying the taxes levied thereon. It was a duty, also, which they owed the plaintiff, to preserve the security they had given it for the repayment of its money. The agreement to pay the taxes did not impose any new or additional duty on the defendants in this respect, but it secured to the plaintiff a convenient means of protecting itself from the consequences of the defendant's delinquency, namely, the right, in such a contingency, to pay the taxes itself, and add the amount thereof to its mortgage. But independent of any agreement, the law (Laws Or. 770, § 105) authorized the plaintiff to pay any taxes on the land covered by its mortgage, whenever the same became delinquent, and provided that the same should thereupon become a part of the mortgage. Under such circumstances, it is preposterous to talk about this agreement being usurious, or that the provision for the payment of these taxes by the mortgagors was in any sense a device or shift to obtain interest for the use of this money in excess of the legal rate.

It is said in *Poppleton* v. *Nelson*, 12 Or. 349, S. C. 7 Pac. Rep. 492, that usury is an "unconscionable defense," involving a forfeiture, and therefore it must be clearly proven by the party alleging it; nor is it enough to show that the lender bargained, in effect, for more than legal interest, or that under his contract he may receive such interest; but, if there is any room for difference of opinion about the matter, it must also appear that the lender so understood the arrangement, and intended thereby to obtain illegal interest. In short, to constitute usury, there must be a corrupt intent to take more than the legal rate of interest for the money loaned. Tyler, Usury, 103. And if this agreement to pay the taxes did not make the contract usurious, no subsequent change of the law could have the effect to

make it so. Therefore the passage of the mortgage tax law in 1882, (Sess. Laws, 64,) whatever effect it may have on the subsequent imposition of taxes on this land, cannot annul this contract, or make it usurious or illegal. The agreement concerning the payment of such taxes still holds good between the parties. But the state, in imposing taxes on this property, may apportion them between the mortgagor and mortgagee according to the value of their respective interests therein, and require each one to pay its portion, in the first instance, into the public treasury. And this is what the mortgage tax law really undertakes to do.

As was said by this court in *Dundee Mortgage & T. I. Co.* v. *School-district*, 10 Sawy. 61, S. C. 19 Fed. Rep. 359:

"It may be admitted that any provision in the mortgage itself, or in a contemporary statute, providing who, as between the parties thereto, shall pay the taxes imposed by the state on the mortgaged premises, or the debt or mortgage itself in lieu thereof, or otherwise, is beyond the power of the state to alter or modify to the prejudice of either party. To do, so would impair the obligation of the contract. But when and to what extent taxes shall be levied is a question for the state to decide. Parties interested in property liable to taxation may contract, as between themselves, on whom the burden of such taxation shall ultimately fall, but they cannot by any such means limit or control the power of the state in placing or apportioning this burden in the first instance, nor in enforcing its payment or collection accordingly."

In *Beckman* v. *Skaggs*, 59 Cal. 544, it was held that an agreement in a mortgage, executed before the adoption of the constitution in 1879, by which a mortgage is made subject to taxation as an interest in the land, giving the mortgagee the right to pay all taxes levied on the mortgaged premises, and add the same to his mortgage, was valid, and that the state could not, by the adoption of said constitution, impair the obligation thereof.

In *McCoppin* v. *McCartney*, 60 Cal. 371, it was held that although the mortgagee was liable, under the constitution of 1879, to pay the tax to the state on his interest in the premises in the first instance, yet, if he had a contract with the mortgagor to pay the same, he might still, as between themselves, enforce it against him, and therefore the constitution did not impair the obligation of such contract.

Our mortgage tax law, in aim and purpose, is a copy of the provision on that subject in the California constitution of 1879. True, instead of directly taxing the mortgagee's interest in the mortgaged premises, as shown by the value of the debt, we have an artificial, clumsy contrivance for taxing the debt, and enforcing the same, by the sale of the mortgage, which is, in effect, but a roundabout way of taxing the mortgagee's interest in the land, and subjecting it to sale for the payment thereof. Still, as I have said, the aim and purpose of the two acts, and the mischief they were intended to remedy, are the same, and the construction given by the courts of California to the one, ought to have weight in the construction of the other.

By the contract made between the plaintiff and the defendants at the time this loan was made the latter agreed to pay all the taxes that might be imposed on the mortgaged premises during the existence of the mortgage, and, if they failed to do so, the plaintiff was thereby authorized to pay any such taxes that were delinquent, and add the amount thereof to his mortgage. Besides this, the law of the state, (section 105, *supra*,) which entered into and became a part of the contract, gave it the same right. Under section 10 of article 1 of the constitution of the United States the legislature could not impair the obligation of this contract. The prohibition contained in this section is a limitation on the legislative power of the state, whatever form it may assume. *Murray* v. *Charleston*, 96 U. S. 432. It may, as it has, change the mode of assessing this land for taxation, and enforcing the payment of the taxes levied thereon, and it may thereby, as it has, change the relations between these parties and the state, but not the relations between themselves, growing out of or constituted by the contract between them.

Although not referred to by counsel on the oral argument, or in the briefs, I do not feel at liberty to dismiss this question without some consideration of the statute of 1885, (Sess. Laws, 125,) commonly called the "Black Act;" which provides that all contracts between a borrower and lender, where the rate of interest is not more than 8 per centum, for the payment of "the taxes on the debt, credit, or mortgage existing or entered into between such parties, are hereby declared legal and valid, and shall not be deemed or taken to be usurious." If there had been no statute on the subject prior to this, it might be said that its passage implied that the legislature regarded such contracts as invalid; that this is an enabling act, authorizing a contract between a borrower and lender that prior thereto was illegal. But statutes are sometimes passed to declare acts valid out of mere abundance of caution, or to settle a doubt that is hardly reasonable; and therefore it does not follow that when a legislature declare a contract valid it was ever invalid; and if it was not, such declaration does not have the effect to make it so. But by section 105, *supra*, (Act of 1854, section 80,) it was the law of the state, for more than 30 years prior to the passage of the Black act, that, in case the mortgagor failed to pay the taxes on the mortgaged premises, the mortgagee might do so, and add the amount to his mortgage, and collect it accordingly. It could not, then, have been unlawful for the parties to a mortgage to provide, by contract, for the payment of the taxes on the mortgaged premises in the manner prescribed by law in such cases.

The contract to pay the taxes being valid, the passage of the Black act, no more than that of the mortgage tax law, did not render it invalid, or impair its obligation. Admitting that section 105, *supra*, may be amended or repealed by implication, the only effect of the Black act is to limit the already existing right to make such con-

tracts to cases where the loan does not bear interest at a rate above 8 per centum per annum.

In conclusion, I find that the law is against the defendants on all the points made in support of their demurrer, and therefore it must be overruled. The plaintiff is entitled to a decree for the sale of the mortgaged premises, and the application of the proceeds thereof to its claim as made in the bill, including an attorney's fee of $200, and its costs and disbursements; and it is so ordered.

The mortgage is not made an exhibit in the case, though, under the stipulation of April 13th, the original is submitted with the bill, and as a part of it, for the purpose of determining the liability of the defendants to pay the taxes in question. But I have not found occasion to make any use of the mortgage in this connection, as the agreement to pay the taxes, and the delinquency of the defendants, and the payment of them by the plaintiff, are duly set out in the bill. However, on looking into the mortgage, I find a stipulation therein to the effect that this mortgage and note shall, so far as the rate of interest is concerned, "be construed according to the laws of Oregon, where the same is made." Attention was not called to this stipulation in the argument, and it is not set forth in the bill. Therefore I have not made any formal use of it in reaching the conclusion announced. Of course, it demonstrates what is otherwise apparent, that the parties in making the contract for interest had reference to the law of Oregon, and not that of New York.