# Combs, Appellant, *v.* Delaware & Atlantic Telegraph & Telephone Company.

*Negligence—Telephone company—Live wire.*

It is the duty of a telephone company to inspect its poles and lines, to maintain them in a safe condition as to the public and its employees and to keep them free from contact with dangerous and deadly currents of electricity not properly protected whether produced by it or by some other company.

In an action against a telephone company to recover damages for the death of plaintiff's husband, it appeared that the decedent was killed while descending a telephone pole while in the employ of the defendant. The testimony showed that the pole in question was charred at a point where an electric light wire either did, or could have come in contact with it. The pole leaned towards the electric wire and away from its proper position, and the wire sagged in the direction of the pole. At some time, at least six weeks before the accident, a person not disclosed by the testimony nailed a piece of board over the charred place on the pole, and attached thereto a bracket a few inches wide on the end of which was a glass insulator, to which was fastened the electric wire. The decedent was not familiar with the lines in the vicinity of the place of the accident. In an emergency caused by a storm, he was sent out to aid other employees to locate the trouble, and make repairs to the lines. While descending the pole in question, his body suddenly fell to the ground, his face was black, and his shoe burst open. He did not live long enough to tell the story. Immediately after the accident it was noticed that the electric wire for a few inches on either side of the glass insulator was uninsulated. *Held,* that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Jan. 11, 1907. Appeal, No. 181, Jan. T., 1906, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1903, No. 1,365, for defendant non obstante veredicto in case of Hattie L. Combs v. Delaware & Atlantic Telegraph & Telephone Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before BRÉGY, J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiff for $7,000.   On motion of defendant judgment was entered for defendant non obstante veredicto.

*Francis S. Brown*, of *Simpson & Brown*, with him *Robert W. Archbald, Jr.*, for appellant.—The case was for the jury: Dalmas v. Kemble, 215 Pa. 410; Bannon v. Lutz, 158 Pa. 166; Bier v. Mfg. Co., 130 Pa. 446; McGuigan v. Beatty, 186 Pa. 329; Fitzgerald v. Edison Co., 200 Pa. 540; Morgan v. Electric Co., 213 Pa. 151; Dwyer v. Electric Co., 20 App. Div. 124 (46 N. Y. Supp. 874); Newark Electric Light and Power Co. v. Garden, 78 Fed. Repr. 74; New Omaha Thompson-Houston Electric Light Co. v. Rombold, 68 Neb. 54 (93 N. W. Repr. 966; Illingsworth v. Light Co., 161 Mass. 583 (37 N. E. Repr. 778).

*Frank P. Prichard*, with him *James Wilson Bayard*, for appellee.

OPINION BY MR JUSTICE ELKIN, June 3, 1907:

We have laboriously examined this case in order to legally determine the rights of the parties.   It is a close case and not free from difficulty.   We have had some doubt, after full consideration of all the testimony, whether it was the duty of the trial judge to give binding instructions for defendant, thus deciding as a matter of law that the evidence was insufficient to convict appellee of negligence, or whether, under the established facts, the jury should have been permitted to draw the inference of negligence so as to make the company liable in damages.   The trial judge submitted the question to the jury. The court in banc entered judgment for defendant non obstante.   The case was carefully tried in the court below and has been ably argued here.   The conclusion by this court is that it was a question for the jury, and for the following reasons:   The proven facts are that the telephone pole was charred at a point where the electric light wire either did or could have come in contact with it.   The telephone pole leaned toward the electric wire and away from its proper position.   The electric wire sagged in the direction of the telephone pole. Someone, not disclosed by the testimony, at least six weeks before the accident, realized the danger and attempted to remedy

the difficulty by nailing a piece of board over the charred place on the pole and attached thereto a bracket a few inches wide, on the end of which was a glass insulator to which was fastened the electric wire. The decedent, an employee of the telephone company, was not familiar with its lines in the vicinity of the accident. In an emergency, caused by a storm, he was sent out from Wilmington to aid the local employees at Chester in locating the trouble and making repairs to the lines. While descending the pole something happened, no one knows what except the dead man, and his lips are closed, but his body fell to the ground, his face was black, his shoe burst open, and he did not live long enough to tell the story. Immediately after the accident it was noticed that the electric wire for a few inches on either side of the glass insulator was uninsulated. How long it had been in this condition there is no positive evidence to show. No matter how unfortunate the accident, nor how distressing the circumstances surrounding it, there can be no recovery unless it be shown that appellee failed in the performance of some duty it owed to the decedent, its employee.

In our opinion, the facts above recited are sufficient to warrant a jury in finding that death resulted by reason of the foot of decedent coming in contact with the uninsulated part of the electric light wire near the bracket. Indeed, I do not see how any other reasonable inference could be drawn. Again, we think the facts were sufficient to submit to the jury on the question of constructive notice. The wire chief of the defendant company testified that when he took charge of the work, six weeks prior to the accident, the bracket projecting from the pole with the electric wire attached was there. He did not know whether it was properly insulated or not, and, relying on these circumstances, it is contended that the evidence fails to show any facts from which an inference could be drawn that the alleged dangerous or defective condition at the particular point had existed a sufficient length of time to charge defendant with constructive notice of the uninsulated portion of the wire. This position loses sight of the fact that the telephone pole was charred and that the board and bracket were nailed over the blackened surface at the point where the electric wire either could have come in contact with it, or actually

did so.  There can be no doubt that the surface of the pole was charred before the bracket was put up, because the board which supported it covered the blackened surface.  If, therefore, in point of fact, the pole was charred by the uninsulated electric wire, it must have been done before the bracket was put up, more than six weeks before the accident, and this would be sufficient to charge appellee with constructive notice of the defective condition.  It is true there is no positive evidence showing that the pole was charred by contact with the uninsulated electric wire, but, in our opinion, the evidence was sufficient to submit to the jury on this question.  The inference is almost irresistible that the pole was charred by the current of electricity passing through the uninsulated wire at the point of contact.

It is argued that because the dangerous and defective condition was not in the telephone wire, but in the electric wire, over which appellees had no control, the negligence complained of was that of the electric light company and not of the telephone company.  This may be in a sense true.  It was no part of the duty of the telephone company to repair the lines and wires of the electric light company, nor, in this particular instance, to properly insulate that portion of the wire uninsulated.  It was, however, the duty of the telephone company to inspect its poles and lines and maintain them in a safe condition as to the public and as to its own employees.  It was the duty of the telephone company to keep its lines and poles free from contact with dangerous and deadly currents of electricity not properly protected, and this duty rested upon it no matter whether the dangerous currents were produced by the telephone company or by some other company generating electricity.  If the defective condition of the electric wire, attached to the telephone pole, existed for a period of six weeks, and the facts are sufficient to justify the jury in so finding, the appellee company would be affected with constructive notice at least, and the duty rested upon it to give notice of that dangerous condition to its employee, the decedent, a new man unacquainted with the facts, and unfamiliar with the location, before he proceeded to climb the pole.

The question of contributory negligence is not raised by this record and no opinion is expressed thereon.

Judgment reversed and record remitted to the court below with instructions to enter judgment in favor of the plaintiff on the verdict.