## Arnold v. Northeastern Pennsylvania Telephone Co., Appellant.

*Negligence—Master and servant — Telephone companies — Defective pole—Duty to inspect—Injury to lineman—Contributory negligence—Assumption of risk—Case for jury.*

1. It is the duty of a telephone company to inspect its poles and lines and to maintain them in a safe condition as to the public and its employees.

2. In an action against a telephone company brought by a lineman in its employ to recover damages for personal injuries resulting from the breaking of a pole upon which plaintiff had climbed in the course of his duty, the case was for the jury and a verdict and judgment for the plaintiff will be sustained where it appears that the pole had rotted below the surface of the ground, although otherwise presenting a sound appearance; that it had not been inspected for more than ten years; that it was no part of plaintiff's duty to inspect poles; and that the breaking of the pole was caused by such defective condition.

3. In such case there was no assumption of risk on the part of the plaintiff.

Argued February 21, 1916.   Appeal, No. 341, Jan. T., 1915, by defendant, from judgment of C. P. Wayne Co., March T., 1913, No. 7, on verdict for plaintiffs in case of Augusta K. Arnold, (Parent) and William J. Arnold, by his Mother and Next Friend, Augusta K. Arnold v. Northeastern Pennsylvania Telephone Company. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, P. J.   Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion by SEARLE, P. J.:

Plaintiff's statement sets forth (inter alia) that on the fifth day of November nineteen hundred and twelve, William J. Arnold was a lineman in the employ of the defendant company, and by its direction was engaged in

the line of his duties on the top of one of defendant company's telephone poles.

That it was the duty of the defendant company to provide him a reasonably safe place to work and use due care to see that the pole upon which he was directed to perform his duties was sound and reasonably safe: that defendant company neglected its duties and provided an unfit, rotten, rotten at the base, weak, old, long-exposed and badly decayed pole. That said William J. Arnold had no knowledge of the condition of said pole and without any fault on his part and while in the performance of his duties, the pole broke and threw him to the ground, and thereby he was seriously and permanently injured.

The case was ably and carefully tried on both sides, and the jury rendered a verdict for plaintiffs in the sum of five thousand seven hundred dollars.

A motion for judgment n. o. v. and rule for new trial have been argued by the respective counsel.

The only reason urged upon the argument for reason for new trial was the refusal of the court to give binding instructions for the defendant. It was not assigned as a reason for new trial (nor, under the evidence, could such a reason be well assigned) that the verdict was excessive. The same reasons were urged to sustain the motion for judgment n. o. v. and rule for new trial; to wit, that no negligence on the part of the defendant company was shown, and that the plaintiff, William J. Arnold, was guilty of contributory negligence. We can therefore dispose of the motion for judgment n. o. v. and the rule for new trial in the same opinion.

From the evidence in the case, it appears that the pole in question presented a sound appearance above the ground; that it was rotten below the surface of the ground; and a portion of the pole which plaintiff alleges was below the ground was produced in court and offered in evidence.

Evidence was produced showing the life of such poles;

also that well regulated telephone and telegraph companies made a general and thorough inspection below the ground of their poles at periods of from ten to fifteen years; that this pole had been in the ground at least ten years; that the defendant company had never made a general inspection of its poles; that this pole in question had never been particularly inspected by the defendant company.

It was also shown that a special kind of iron bar was used for the purpose of inspecting poles below the ground; that William J. Arnold had never been furnished with any such bar or other tools for inspection, and he testified that he was not instructed to inspect any poles, that it was not his duty to inspect them and that he had no experience in such inspection.

Defendant company, however, contends that it owed to its lineman, William J. Arnold, no duty of inspection; that he assumed the risk of the pole falling by reason of rottenness which might have been discovered by the customary inspection with the tools made for that purpose. We cannot agree with this contention, but think the defendant company was bound to inspect its poles, and that its lineman did not assume the risk of accident which might arise by reason of the neglect of the defendant company in that respect. We are well aware that a contrary rule is held in some of our states but we do not think such is the law in Pennsylvania.

We must not lose sight of the duty of the company to provide and maintain a reasonably safe place for its employee to work. Its duty can neither be shifted or delegated to another, and it is too well established to need further comment. See Lewis v. Seifert, 116 Pa. 628.

To require one to work upon a pole is to send him into a place dangerous at best. The duty to provide and maintain such a place reasonably safe is a primary duty. A pole that is allowed to become weakened and rotten at the base is not a reasonably safe pole. The duty of

the employer is not only to provide but he is to maintain the place in a condition of reasonable safety. When to do so requires inspection, that becomes a primary duty of the master, and he is bound to make such inspection as the nature of the thing demands, and make proper and timely inspection for defects. See McConnell v. Penna. R. R. Co., 223 Pa. 442.

"It is the duty of a telephone company to inspect its poles and lines, to maintain them in a safe condition as to the public and its employees": Combs v. Del. & Atl. Teleg. & Tel. Co., 218 Pa. 440, 443.

"It is a fair corollary from the foregoing (opinion in 218 Pa. 440) that a breach of duty ensues if a pole is permitted to become or remain in a rotten condition with express knowledge of the company, or with constructive knowledge based upon the lapse of time and the lack of inspection": McHugh v. Citizens Electric Illuminating Company, 17 Luzerne Leg. Reg. 43, 45, in Common Pleas of Luzerne County, Penna.

In LaDuke v. Hudson River Teleph. Co., 120 N. Y., Supp. 171, it was held that it was incumbent upon the defendant company, in the fulfillment of its duty to furnish its linemen a safe place in which to work, to inspect its poles below the surface of the ground, unless it had devolved such duty of inspection upon its linemen, citing authorities from different states.

No states have gone further than Pennsylvania with respect to the general duties of inspection by employers.

The evidence in this case shows that if a pole appears straight and sound by outward examination by a lineman, it is customary for him to climb it at once, without further inspection, and this would appear to be the natural course for a lineman to follow; and to establish the doctrine that companies are not liable for any accident which might come to linemen, caused solely by the lack on their part of inspection of poles below the ground, when linemen are not instructed to inspect the poles and are not furnished the proper tools for such

inspection, seems to us to be an unsafe doctrine, having little regard or care for the lives or safety of such linemen.

It is also contended that even though it were shown that the defendant company was negligent with respect to the pole in question, yet that William J. Arnold was guilty of contributory negligence and for that reason could not recover; that he was guilty of negligence— (a) In not examining more carefully the pole before climbing to see if it was becoming rotten below the ground—and (b) In the manner in which he was doing his work at the time of the accident.

We still think that the question of plaintiff's contributory negligence was for the jury.

If the pole in question showed signs of weakness, then William J. Arnold, the plaintiff, might have been guilty of contributory negligence in not more carefully inspecting before climbing. The evidence, however, shows that this pole was straight and appeared sound, and William J. Arnold testified that it showed no indication of rottenness, that he looked at it and when asked the question, "Did you go close to the pole and near the ground to find if any portion of it was rotten there?" answered, "Yes, sir. There was no indication of it."

The evidence as to the appearance of the pole was uncontradicted.

William J. Arnold also testified that he had had no experience in inspection of poles; was never instructed to inspect poles; that it was not a part of his duty and he was furnished no tools for that purpose.

The testimony of other witnesses was to the effect that if a pole was straight and appeared sound, the lineman was justified in climbing and linemen do climb such poles without further inspection, and in this case the jury quite well found, from all the evidence, that William J. Arnold, the plaintiff, was not negligent in not further inspecting the pole in question before climbing it.

With respect to the negligence of William J. Arnold

in the manner of doing his work, there was evidence with regard to the propriety of having the pole guyed or supported by a pike pole before climbing it.

A cross arm was off the angle pole next to the one climbed by Arnold, so that the wires sagged from the pole climbed by him to the angle pole towards New Milford. The day before he had climbed this pole, found the wires broken and repaired them, used come-alongs and taken up the slack in the wires so that teams could pass under them, and having reported the condition to the superintendent, was instructed to go back and fix the cross arm and take care of the wires.

There was evidence given by experts produced by the defendant company that the pole might have been guyed by lines or supported by pike poles. We have no evidence that Arnold had any pike pole at that time, or that one was ever furnished him by defendant company, nor does it appear that at the time of the accident he had any lines suitable for guying the poles, nor do we find any evidence that any such line was ever furnished him by the defendant company. It was also shown that he was alone and had no one to help him.

The question is not so much as to how this pole might possibly have been made safe by experts, but whether the plaintiff, William J. Arnold, was doing what a man of ordinary prudence would have done under the circumstances. He testified that he had climbed the pole; that he was tapping the wires that had sagged down again; that they had become twisted over night. He testified that the line might have pulled a pound or two on the side but said the way the wires were slacked, he did not think they pulled much.

We think, under all the evidence in the case, the question of plaintiff's contributory negligence was for the jury, and was properly submitted to them, and that they might find from the evidence that he was not guilty of any negligence which would prevent his recovery in this case.

The question of the negligence of the defendant company with respect to the pole in question, and of the contributory negligence of the plaintiff, William J. Arnold, having been submitted (properly, as we think) to the jury, and they, by their verdict, having found that the defendant company was guilty of negligence and that William J. Arnold was not guilty of contributory negligence, the rule for new trial should be discharged and the motion for judgment n. o. v. denied.

Verdict for Augusta K. Arnold for $750, and William J. Arnold for $5,000, and judgment thereon. Defendant appealed.

*Error assigned* was in discharging defendant's motions for a new trial and for judgment non obstante veredicto.

*Homer Greene,* with him *W. H. Lee* and *W. D. B. Ainey,* for appellant.

*Paul J. Sherwood,* with him *Charles P. Searle,* for appellee.

PER CURIAM, March 13, 1916:

The judgment is affirmed on the opinion of the learned court below denying the motion of defendant for judgment non obstante veredicto.