(December 21, 1917.)

## JACK RAMON, Respondent, v. INTERSTATE UTILITIES COMPANY, a Corporation, Appellant.

[170 Pac. 88.]

PERSONAL INJURY — DEFECTIVE TELEPHONE POLE — LATENT DEFECT — CONTRACT OF EMPLOYMENT—ASSUMPTION OF RISK—DUTY AND LIABILITY OF EMPLOYER—INSTRUCTIONS—DAMAGES.

1. Where the employee of a telephone company, in order to make certain repairs, ascended a telephone pole and sustained injuries as a result of the breaking of the pole beneath the surface of the ground on account of its decayed condition, which condition was not obvious or known to him, it being shown that it was not the duty of the employee under his contract of employment to make an independent inspection of the pole for the purpose of discovering hidden defects, the failure of the telephone company to use due care to maintain such pole in a reasonably safe condition for the purpose of such employment constitutes actionable negligence.

2. It is the primary duty of a telephone company to properly inspect and to exercise due care to maintain its poles in a reasonably safe condition for the use of its employees, and it is legally liable for injuries resulting from the neglect of such duty.

3. An employee of a telephone company, the scope of whose employment is confined to seeing that the lines are kept in working order, is required to use only ordinary and reasonable care and caution before ascending one of the company's poles, and if, by the negligence of the company, such defects existed as were latent and could not be discovered without an inspection, the failure of the company to make such inspection and thereby provide a reasonably safe place to work was such neglect and want of due care in

protecting its employees as renders it liable to them in damages for injuries occasioned therefrom.

4. The relation of an employee to his employer is determined by the contract of employment and the actual scope of employment, irrespective of what designation may be given such employment.

5. Where instructions requested are modified by the court so as to be more favorable to the party requesting them than before such modification, the one requesting such instructions cannot be heard to complain.

6. All the instructions given in a case must be read and considered together, and when taken as a whole they correctly state the law and may be reasonably and fairly harmonized. It will be assumed that the jury gave due consideration to the instructions as a whole and was not misled by any single instruction or isolated portion thereof.

7. In this case the court gave the following instruction: "I instruct you that, if you find for the plaintiff, the rule as to damages to be allowed is this: 'Where an injury has been received by the servant on account of the negligence of the master, damages should be computed and ascertained and awarded on the basis, as nearly as possible, of compensating the servant for the pain, suffering and loss he has sustained and will sustain in the future on account of the injury; *and he should be placed,* as nearly as it is possible to estimate, *in as good a position as he was before the injury was inflicted.*'" *Held,* that this instruction fairly states the law and the italicized part does not render it either ambiguous or misleading.

8. *Held,* that the court committed no error in instructions given or refused.

9. *Held,* that under all the facts and circumstances shown by the record in this case, a verdict of $10,000 for the plaintiff was not excessive, and does not appear to have been the result of passion or prejudice or misconception of the law on the part of the jury.

[As to how far servant may rely on knowledge of master concerning risks, see note in 24 **Am. St.** 320.]

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County.   Hon. R. N. Dunn, Judge.

Action for damages for personal injury.   Judgment for plaintiff *affirmed.*

Danson, Williams & Danson, John F. Davies and Geo. D. Lantz, for Appellant.

As between the plaintiff and the defendant, the defendant was under no obligation to inspect the poles to see whether they were decayed, and there was therefore no evidence of negligence on the part of the defendant. (*McIsaac v. Northhampton Electric Lighting Co.,* 172 Mass. 89, 70 Am. St. 244, 51 N. E. 524; *Kellogg v. Denver City Tramway Co.,* 18 Colo. App. 475, 72 Pac. 609; *Adams v. Central Indiana R. Co.,* 38 Ind. App. 607, 78 N. E. 687; *Consolidated Gas, Elec. Light & Power Co. v. Chambers,* 112 Ind. 324, 75 Atl. 241, 26 L. R. A., N. S., 509; *De Frates v. Chicago Union Tel. Co.,* 243 Ill. 356, 90 N. E. 719; *Britton v. Central Union Telephone Co.,* 131 Fed. 844, 65 C. C. A. 598; *McGorty v. Southern New England Tel. Co.,* 69 Conn. 635, 61 Am. St. 62, 38 Atl. 359.)

"When it appears the employee is aware, as the plaintiff was, of the risks to which he exposes himself in the service, and consents to encounter them, his employment subject to the risks cannot be treated as a breach of duty." (*McGinnis v. Canada Southern Bridge Co.,* 49 Mich. 466, 13 N. W. 819; *Louisville, N. A. & C. Ry. Co. v. Sandford,* 117 Ind. 265, 19 N. E. 770; *Osborne v. Lehigh Valley Coal Co.,* 97 Wis. 27, 71 N. W. 814; *Coombs v. New Bedford Cordage Co.,* 102 Mass. 572, 3 Am. Rep. 506; *Becker v. Baumgartner,* 5 Ind. App. 576, 32 N. E. 786; *Gleason v. New York & N. E. R. Co.,* 159 Mass. 68, 34 N. E. 79.)

This court has always held that where the risks are known to the employee he cannot recover. (*Minty v. Union Pac. Ry. Co.,* 2 Ida. 437, 21 Pac. 660; *Knauf v. Dover Lumber Co.,* 20 Ida. 773, 120 Pac. 157; *Coulston v. Dover Lumber Co.,* 28 Ida. 390, 154 Pac. 636.)

The jury should not have been instructed that the respondent "should be placed, as nearly as it is possible to estimate, in as good a position as he was before the injury was inflicted." (*Guinard v. Knapp-Stout & Co.,* 95 Wis. 482, 70 N. W. 671; *Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634.) The verdict is

excessive. (*McAlinden v. St. Maries Hosp. Assn.*, 28 Ida. 657, Ann. Cas. 1918A, 380, 156 Pac. 115; *Western & A. R. Co. v. Roberts,* 144 Ga. 250, 86 S. E. 933; *Maloney v. Winston Bros. Co., supra.*)

The evidence shows that inspection was delegated to the respondent. His duties determined what he was, not his conclusions. (*Greenway v. Conroy,* 160 Pa. St. 185, 40 Am. St. 715, 28 Atl. 692; *Sweet v. Oregon-Washington Lbr. & Mfg. Co.* (Wash.), 167 Pac.. 82.)

If it is negligence to adopt a given method of conducting a business, or in using a particular kind of appliance or an appliance in a certain condition, then it must necessarily be contributory negligence for an employee to work under such conditions, knowing full well the dangers. (*Rush v. Missouri Pac. Ry. Co.,* 36 Kan. 129, 12 Pac. 582; *Goure v. Storey,* 17 Ida. 352, 105 Pac. 794.)

J. F. Ailshie, for Respondent.

It is the duty of the master to furnish the servant with a reasonably safe place at which to work, and with reasonably safe machinery, tools and implements with which to work. (*Harvey v. Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 10 Ann. Cas. 1, 87 Pac. 998; *Craesafulli v. Winston Bros. Co.,* 18 Ida. 158, 108 Pac. 740; *Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Knauf v. Dover Lbr. Co.,* 20 Ida. 773, 120 Pac. 157.)

The law makes it the duty of the master to make all needed inspections and examinations. (*Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9.)

The law of master and servant applies as well to telephone companies and their servants as it does to all masters and their servants. (*Corby v. Missouri & Kan. Tel. Co.,* 231 Mo. 417, 132 S. W. 712; *Jackson Fibre Co. v. Meadows,* 159 Fed. 110, 86 C. C. A. 300; *Arnold v. Northeastern Pennsylvania Telephone Co.,* 253 Pa. St. 23, 97 Atl. 1038.)

The defendant company was bound to inspect its poles, and its linemen did not assume the risk of accident which might arise by reason of the neglect of the company in that respect. (*Dupree v. Alexander,* 29 Tex. Civ. 31, 68 S. W. 739; *McGuire v. Bell Telephone Co.,* 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437; *Cumberland Tel. & Tel. Co. v. Bills,* 128 Fed. 272, 62 C. C. A. 620; *Western Union Telegraph Co. v. Tracy,* 114 Fed. 282, 52 C. C. A. 168; *San Antonio Edison Co. v. Dixon,* 17 Tex. Civ. 320, 42 S. W. 1009; *La Duke v. Hudson River Telephone Co.,* 136 App. Div. 136, 120 N. Y. Supp. 171; *Raab v. Hudson River Tel. Co.,* 139 App. Div. 286, 123 N. Y. Supp. 1037; *Byrne v. Eastmans Co.,* 163 N. Y. 461, 57 N. E. 738; *Mobile Electric Co. v. Sanges,* 169 Ala. 341, Ann. Cas. 1912B, 461, 53 So. 176; *Dawson v. Lawrence Gas Light Co.,* 188 Mass. 481, 74 N. E. 912; *Holden v. Gary Telephone Co.,* 109 Minn. 59, 122 N. W. 1018; *Texarkana Telephone Co. v. Pemberton,* 86 Ark. 329, 111 S. W. 257; *City of Greenville v. Branch* (Tex. Civ.), 152 S. W. 478.)

"Where a telephone employee was ordered to locate defects, interfering with the operation of the line, the state of preservation in which standing poles then were was a matter with which he had no concern, and he had a right to assume that they were fit for the uses to which they were applied." (*Holden v. Gary Tel. Co.,* 109 Minn. 59, 122 N. W. 1018; *Texarkana Telephone Co. v. Pemberton,* 86 Ark. 329, 111 S. W. 257; *City of Greenville v. Branch* (Tex. Civ.), 152 S. W. 478; *Jennison v. Waltham Gas Light Co.,* 201 Mass. 352, 87 N. E. 594; *Indianapolis Telephone Co. v. Sproul* (Ind. App.), 93 N. E. 463.)

The instructions must be taken and considered as a whole and construed together. (*Tarr v. Oregon Short Line R. Co.,* 14 Ida. 192, 207, 125 Am. St. 151, 93 Pac. 957; *Osborn v. Cary,* 28 Ida. 89, 152 Pac. 473; *Cady v. Keller,* 28 Ida. 368, 154 Pac. 629; *Taylor v. Lytle,* 29 Ida. 546, 160 Pac. 942; *State v. Curtis,* 29 Ida. 724, 161 Pac. 578.)

BUDGE, C. J.—The appellant owns and operates a telephone system extending through Eastern Washington and

Northern Idaho. The respondent was in its employ at Harrison, Idaho, and while so employed and in the course of making certain necessary repairs under its direction, and while upon one of its telephone poles, sustained serious and permanent injury as a result of the breaking of the pole beneath the ground, precipitating respondent upon the sidewalk. This action was brought to recover damages by reason of the injury sustained, and was tried by the court with a jury, resulting in a verdict in favor of the respondent for the sum of $10,000. From the judgment entered thereon and from an order overruling a motion for a new trial, this appeal is taken.

Respondent in his complaint, *inter alia,* alleges that on the 25th day of November, 1915, he received an order from the appellant's chief operator at Harrison to locate certain trouble on its pole line; made an examination and found the wires attached near the top of one of its poles were crossed; it was not his business or duty or within the scope of his employment to inspect the poles for the purpose of determining whether they were in a safe or dangerous condition; from an ocular examination made by him before ascending the pole there were no outward, apparent or visible defects; before ascending the pole, however, respondent seized hold of it, or, in other words, gave it what is known among linemen and troublemen as the "once over"; thereupon he ascended the pole for a distance of about 35 feet and proceeded to disentangle the wires, and while thus engaged the pole broke about eight inches below the surface of the ground, where it had rotted until it was practically gone. Respondent further alleges that the injuries were occasioned by reason of the negligence, carelessness and wrongful acts of appellant in not having the pole removed and a new, safe and sound pole erected in its stead; appellant had actual knowledge of the unsound and unsafe condition of its pole line, which had never been inspected by the company, although it knew the same had been built from twelve to fifteen years; appellant was negligent and careless in ordering respondent to ascend the pole or to make repairs thereon in its

then condition; that respondent had no knowledge of the unsafe condition of the particular pole in question.

Appellant in its answer denied all of the material allegations of the complaint and set up assumption of risk and contributory negligence.

Briefly stated, the material facts are in substance as follows: The employment of the respondent by appellant is not denied; the scope of his employment is controverted; there is no controversy over the fact that the respondent sustained serious and permanent injuries while in the employ of appellant and while acting under its direction in correcting the trouble on its telephone line as alleged in his complaint; it is undisputed that the particular pole in question, on which he was employed and which broke and fell with him had rotted practically through beneath the surface of the ground some eight or ten inches; that the pole was in an unsafe condition which was not known to respondent; that the pole line had never been inspected by appellant for the purpose of ascertaining its condition; that the defect could not have been discovered in the absence of an inspection.

It is unnecessary to discuss each assignment of error separately. The first five assignments go largely to the sufficiency of the evidence; assignments 6 to 20, inclusive, predicate error upon the giving of certain instructions and the refusal to give others requested by appellant. The twenty-first assignment that: "The court erred in overruling the appellant's motion for a new trial," is in legal effect merely a summary of the various alleged errors.

The main question in issue toward which both parties directed their evidence is: Was it the duty of respondent under his contract of employment to make an independent inspection of the pole in question for the purpose of discovering hidden defects and to correct them, or was it the primary duty of the appellant company under its contract of employment with respondent to furnish him with a reasonably safe place to work and to maintain the same in a reasonably safe condition, and in order to do so was it the duty of appellant company to properly inspect its pole line, including the par-

ticular pole in question, for hidden defects, and did its failure so to do constitute actionable negligence?

This important issue was squarely submitted, and we think correctly so, to the jury, in the following instructions: "I instruct you that it was the duty of the defendant company to provide and maintain a reasonably safe place for its employee, the plaintiff, to work, and that this duty is one that could not be shifted or delegated to another. The duty of inspecting its poles to learn if they were in a decayed or rotten condition below the surface of the ground so as to make them unsafe or dangerous for a lineman, known as a troubleman, in repairing wire trouble, to ascend and work upon, was a primary duty of the company which it owed to the servant and was bound to discharge in a reasonably diligent and careful manner. And in this case the plaintiff did not assume the risk of latent and invisible defects caused by the rotten and decayed condition of the pole underground, unless you find that the plaintiff under his employment by the defendant had agreed to do such inspection and thereby assumed such risk himself, or unless such latent and invisible defects would have been discovered by the plaintiff by the exercise of reasonable care and unless the plaintiff failed to exercise such reasonable care"; and "You are instructed that the law with reference to the master being required to furnish a safe place to work or safe instrumentalities, does not apply as to work which the employee is employed to make safe. So in this case if you find it was Mr. Ramon's duty under his contract to make the pole safe, he cannot complain because the pole may have been unsafe." (*Western Union Tel. Co. v. Tracy*, 114 Fed. 282, 52 C. C. A. 168; *La Duke v. Hudson River Telephone Co.*, 136 App. Div. 136, 120 N. Y. Supp. 171; *Dupree v. Alexander*, 29 Tex. Civ. 31, 68 S. W. 739.)

Upon this issue the jury found that the duty of inspection rested upon appellant and not upon respondent. It follows that since the duty of inspection was a primary duty devolving upon the appellant, it thereby became responsible for negligence in its performance. (*Western Union Tel. Co. v.*

*Tracy, supra.*)   The company, in the absence of a contract of employment with respondent whereby the duty to inspect the telephone pole for hidden defects before climbing it devolved upon him, assumed the duty of using due care to the end that the pole upon which respondent was directed to work be reasonably sound and safe.   The plaintiff company neglected its duty in this respect and provided a pole that beneath the surface of the ground was old and rotten, which condition was unknown to respondent.   Under the great weight of authority it was clearly the primary duty of the company to use due care to furnish the respondent with a reasonably safe place to work,—a pole that is allowed to become rotten beneath the ground is not a reasonably safe pole upon which to work.   It was not only the duty of the company to use such care to furnish a reasonably safe place but to inspect its pole line as often as necessary, and by reasonable inspection and care to maintain the poles in a reasonably safe condition.   (*Combs v. Delaware & Atlantic Telegraph & Tel. Co.*, 218 Pa. St. 440–443, 67 Atl. 751, 752.)

The record in this case discloses, as did the record in the case of *Arnold v. Northeastern Pennsylvania Telephone Co.*, 253 Pa. St. 23, 97 Atl. 1038, that "if a pole appears straight and sound by outward examination by a lineman, it is customary for him to climb it at once, without further inspection, and this would appear to be the natural course for a lineman to follow"; and the supreme court of Pennsylvania in the latter case, referring to the situation just quoted, held that "to establish the doctrine that companies are not liable for any accident which might come to linemen, caused solely by the lack on their part of inspection of poles below the ground, when linemen are not instructed to inspect the poles and are not furnished the proper tools for such inspection, seems to us to be an unsafe doctrine, having little regard or care for the lives or safety of such linemen."   A positive duty rested upon the company to properly inspect and use due care to render reasonably safe its poles (*Cumberland Telephone & Telegraph Co. v. Bills*, 28 Fed. 272, 62 C. C. A. 620), and this obligation it could not escape.

It is contended by appellant that since respondent had knowledge of the unsafe condition of its pole line system generally, and since employers have a right to decide how their work shall be performed and may employ men to work with dangerous implements and in unsafe places without incurring liability for injuries sustained by workmen who know, or ought to know, the hazards of the service which they have chosen to enter, that in the instant case the falling of the pole in question was one of the hazards assumed by the respondent under his contract of employment, and that he cannot base a claim of negligence upon known dangers. There is abundant evidence in the record that the respondent had no knowledge of the dangerous condition of the particular pole that fell with him. The finding of the jury that appellant's contract of employment did not devolve upon respondent the duty of inspection is conclusive upon that point, and since that duty is a primary duty of the company, it does not follow, although respondent may have known that the pole line of the appellant company, generally, was unsafe, that he assumed any other or greater risk than such as grew out of or was incident to the nature and scope of his employment. He was not required to use more than ordinary and reasonable care and caution before ascending the pole in question, and if, by the negligence of the company, such defects existed as were latent and could not have been discovered without an inspection, the failure of the company to make the inspection was such negligence and want of due care as would render it liable in damages for injuries resulting therefrom.

In the case at bar appellant, conceding that it had knowledge of the decayed condition of its pole line, and that the same was unsafe, nevertheless seeks to excuse itself upon the theory that respondent possessed the same knowledge and thereby assumed the risk of hidden defects. But this contention fails to take into account the fact that respondent had no knowledge of the condition of the particular pole in question or knowledge of the latent defects and that he owed the company no duty of inspection. That he was not in-

structed to or expected to make an inspection is fully borne out by the testimony offered by one of appellant's division superintendents in answer to the following question: "Q. You expect him to make whatever investigation necessary . . . . ?   A. He only makes an ocular examination of the pole as he goes to it.   We have never expected him to stop and dig around a pole before he climbs it."   As was said in the case of *McGuire v. Bell Telephone Co.*, 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437, "the advantage to the company of this course is plain.   If each lineman was to dig around and test every pole before he ascended it, a large part of his time would be taken up by this work alone, and repeated testing would soon impair the stability of the pole itself."

In the absence of the duty to inspect resting upon the respondent, he had a right to assume that the pole was fit for the uses to which the company applied it.   (*Holden v. Gary Telephone Co.*, 109 Minn. 59, 122. N. W. 1018.)   Although he was furnished with no tools for the purpose of making an inspection, nevertheless the company, with full knowledge of the age and dangerous condition of its pole line, which it admits it had never inspected, seeks to relieve itself of liability upon the theory that respondent was its general manager, that tools for inspection were available, that he possessed the same knowledge it possessed, his employment was not limited and he had never been forbidden to inspect the poles; that whatever the dangers incident to his employment were, he had assumed the same and therefore could not recover. This contention is untenable.   It is clear from the evidence that respondent was nothing more than a "troubleman" or "trouble-shooter" (*Dow v. Sunset Telephone & Telegraph Co.*, 157 Cal. 182, 106 Pac. 587); that he was designated by some other name would make no difference,—the contract and the scope of his employment determined his relationship to the company and not his designation.   It was respondent's duty to discover and correct minor troubles interfering with the telephone service, to keep the line open that messages might be sent and received and conversations carried on in order

that there be no decrease either in the service to the public or revenue to the company. He was not charged with the duty of ascertaining the state of preservation of the pole line. As such troubleman he was furnished with such tools only as were necessary for his use in the performance of these particular duties. To say that additional tools were owned by the company, or that under special directions he had replaced poles and, possibly upon special occasions, performed work and labor outside of his general known duties, is no answer to the charge of negligence, particularly in view of the failure of the company to exercise due care to furnish the respondent with a reasonably safe place to work and its failure in the performance of its primary duty to make reasonable inspections from time to time of its pole line.

While it is true that even a troubleman must use reasonable care to avoid open and obvious dangers, and that he assumes risks incident to his employment and which grow out of the same, he is not required, under the general rule as we find it in cases of this kind, to make an independent inspection, unless such inspection is made one of his primary duties and is within the contract of his employment, or under express instructions to make an independent inspection for hidden dangers of each and every pole upon which he works.

This disposes of the assignments of error touching the sufficiency of the evidence and further renders a detailed discussion of the assignments with reference to instructions unnecessary. The main point in the case, and the instructions relating thereto, has already been discussed. The objections raised to the instructions given are all based upon appellant's erroneous theory as to the matters already reviewed. Some of these instructions were given as requested by appellant with slight modifications; we have examined the modifications in the light of appellant's criticism and have found that in each instance the instruction as given stated the law more favorably to appellant than would have been the case without the modification. The instructions which were refused, likewise, were drawn in the light of appellant's erroneous theory of the facts hereinbefore considered

and the law applicable thereto, and did not in either instance correctly state the law with reference to this case. The instructions as a whole correctly stated the law applicable to the facts and circumstances in evidence upon every issue involved. They are neither ambiguous nor misleading, and this court has uniformly adhered to the rule that ''all the instructions given in a case must be read and considered together, and where, taken as a whole, they correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge and was not misled by an isolated portion thereof.'' (*State v. Curtis*, 30 Ida. 537, 165 Pac. 999; *Osborn v. Cary*, 28 Ida. 89, 152 Pac. 473; *Cady v. Keller*, 28 Ida. 368, 154 Pac. 629; *Taylor v. Lytle*, 29 Ida. 546, 160 Pac. 942; *State v. Curtis*, 29 Ida. 724, 161 Pac. 578.)

It is contended by appellant that, in any event, the verdict is excessive. Instruction No. 5 as given reads as follows: ''I instruct you that, if you find for the plaintiff, the rule as to damages to be allowed is this: 'Where an injury has been received by the servant on account of the negligence of the master, damages should be computed and ascertained and awarded on the basis, as nearly as possible, of compensating the servant for the pain, suffering and loss he has sustained and will sustain in the future on account of the injury; *and he should be placed,* as nearly as it is possible to estimate, *in as good a position as he was before the injury was inflicted.*' '' It is urged that the italicized portion of this instruction ''turned the jury loose without chart or guide, to grant such damages as they may think the pecuniary necessities of the plaintiff might seem to need, regardless of the evidence in the case,'' and the case of *Holt v. Spokane & P. Ry. Co.*, 3 Ida. 703, 35 Pac. 39, is cited in support of this contention. But the attempt on the part of appellant to draw a parallel between the instructions as here given and the situation confronting the court in the Holt case is strained and untenable. The instruction as given, when read as a whole, fairly states the law and could lead no one

of sufficient intelligence to qualify as a juror into the erroneous view contended for by appellant. It may be that for the purpose of an instruction the principle involved might be stated with greater judicial nicety, but the language is neither ambiguous, confusing nor misleading.

In any event, as is tacitly conceded by appellant, the instruction has no important bearing except as to the amount of the verdict, which was the full amount demanded in the complaint. When all of the facts and circumstances in evidence are considered, there is nothing in the record which tends to show either that the verdict was excessive or that it was the result of passion or prejudice, or that it had been superinduced by any misconception on the part of the jury as to the law which was to control and guide their deliberations upon the evidence in arriving at a verdict.

We have carefully examined the entire case and are satisfied that no prejudicial error is disclosed in the record. The judgment is therefore affirmed. Costs awarded to respondent.

Morgan and Rice, JJ., concur.